# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49933

|  |  |  |
|---|---|---|
| PAT STIFFLER, an individual, | ) | |
| | ) | |
|   Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HYDROBLEND, INC. doing business as HB SPECIALTY FOODS, a business corporation, | ) ) ) | Boise, June 2023 Term |
| | ) | Opinion Filed: September 8, 2023 |
|   Defendant-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| and | ) ) | |
| JOHN DOE CORPORATIONS I-V, | ) ) | |
|   Defendants. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Davis VanderVelde, District Judge.

The judgment of the district court is affirmed in part and reversed in part.

Hepworth Law Offices, Boise, for Appellant. Jeffrey Hepworth argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Respondent. Tyler Anderson argued.

_____

BRODY, Justice.

This case concerns a wage claim dispute between Pat Stiffler and his previous employer, Hydroblend, Inc. After a dispute arose concerning incentive pay on an allegedly miscoded account, Stiffler filed a complaint for unpaid wages, breach of contract, retaliation, and wrongful termination. The proceedings culminated with two orders from the district court that (1) awarded summary judgment to Hydroblend concerning treble damages, (2) concluded multiple issues were governed by an arbitration provision in Stiffler's employment agreement, and (3) denied summary judgment where disputed facts remained at issue. Stiffler appeals the district court's decisions,

1

arguing that he is entitled to treble damages on all wages under Idaho's Wage Claim Act, as well as severance pay under his 2019 employment contract. Stiffler also argues that the district court erred by compelling arbitration of some of his claims. For the following reasons, we affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Stiffler's Employment with Hydroblend

For over ten years, Stiffler was employed by Hydroblend, Inc. ("Hydroblend"), a Nampa corporation that is involved in the food industry. Most recently, Stiffler served as a vice president of strategy and growth for the company.

For purposes of calculating revenue and expenses, Hydroblend's accounting system codes customer accounts and business lines generally as "diversified business" or "house accounts" (also known as "core accounts"). In 2019, Stiffler entered into a new employment contract with Hydroblend (the "2019 Contract"), which provided compensation in the form of annual base pay plus commission-based incentive pay accrued as a percentage of revenue earned on diversified business accounts assigned to Stiffler. Incentive pay was to be calculated and paid quarterly, with final yearly incentive pay, if any, to be payable some time prior to March 1 of the year after it became due. The 2019 Contract also specified that Hydroblend's accounting system assigns codes to accounts and business lines, and was "determinative as to whether related income/expenses is considered Diversified Business."

In October 2019, Stiffler began working with Diversified Foods & Seasonings, LLC ("DFS"). DFS was an existing customer previously assigned to another Hydroblend salesman, but was eventually assigned to Stiffler sometime later that year. DFS was entered into Hydroblend's accounting system as a core account, yet Hydroblend paid Stiffler quarterly incentive pay on the account. This assignment is important because there is conflicting evidence in the record as to how the DFS account should have been coded. Some evidence suggests that DFS was meant to be coded as diversified business, which would entitle Stiffler to incentive pay pursuant to his 2019 Contract. Other evidence suggests that DFS was supposed to be coded as a "house account" or "core account," as it was assigned, upon which no commissions would be paid. Nonetheless, Stiffler received incentive pay for the DFS account for the first three quarters of 2020.

In late 2020, Hydroblend informed Stiffler that it wished to enter into a new employment contract with him. Stiffler rejected the first proposal, but executed the second proposed contract

after "much discussion" with Hydroblend. This employment agreement became effective January 1, 2021 (the "2021 Contract"), and contains an integration provision that expressly states that the 2021 Contract constitutes the entire agreement between the parties as of the effective date of the agreement and that it supersedes and replaces all prior agreements:

> On the Effective Date of this Agreement, this Agreement will supersede and replace all prior agreements between the parties hereto, whether in writing or otherwise, relating to the subject matter hereof. On the Effective Date of this Agreement, this Agreement will contain the entire agreement of the parties, and no representations, inducements, promises, or agreements, oral or otherwise, not embodied herein, will be of any force or effect.

Additional terms of the 2021 Contract pertinent to this appeal are those involving severance, compensation, and resolution of claims. Any severance was to be paid as follows: "25% of the amount of Severance will be paid within ten (10) days of Employee's last day of work, with the remaining 75% paid in twelve (12) equal monthly installments every month thereafter." This severance-pay provision in the 2021 Contract is the same as the provision in the 2019 Contract. Similar to the 2019 Contract, compensation consisted of annual base pay and incentive pay, though under the 2021 Contract Stiffler's incentive pay became capped and was calculated as a percentage of revenue earned on "strategic account customers."

The 2021 Contract also contains a mediation and arbitration clause that did not exist in the 2019 Contract. The mediation and arbitration clause in the 2021 Contract reads as follows:

> 6.1.1 Mediation. In the event of any controversy or claim arising out of or relating to this Agreement, or a breach thereof, the parties hereto shall first attempt to settle the dispute by mediation. The party seeking to mediate any controversy or claim arising out of or relating to this Agreement shall give the other party advance written notice of its intent to mediate, and such written notice shall describe in detail the alleged controversy or claim at issue. Mediation shall be held in Ada or Canyon County, Idaho, within sixty (60) days of the notice described in the preceding sentence. Mediation hereunder shall be administered by the American Arbitration Association under its Mediation Rules. If settlement is not reached at mediation, any unresolved controversy or claim shall be settled by arbitration as set forth in Article 7.01(b) below.

> 6.1.2 Arbitration. Any dispute, controversy or claim arising out of or relating in any way to this Agreement, including, without limitation, any dispute concerning the construction, validity, interpretation, enforceability or breach of this Agreement, that is not settled via mediation shall be exclusively resolved by binding arbitration upon a party's submission of the dispute to arbitration. The demand for arbitration shall be made within a reasonable time after mediation. Arbitration hereunder shall be administered by the American Arbitration Association under its Commercial Arbitration Rules.

3

The number of arbitrators shall be one. The place of arbitration shall be Boise, Idaho, and all parties hereto consent to jurisdiction in said city and state. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This agreement to arbitrate shall be specifically enforceable, and either party may apply to any court with jurisdiction for interim or conservatory relief, including, without limitation, a proceeding to compel arbitration.

Notably, "Article 7.01(b)," mentioned in the first paragraph, is not present in the 2021 Contract, but an arbitration provision still follows the mediation section.

## B. Termination and Litigation

In January of 2021, Hydroblend's executives met, in part, to discuss reconciliation of the company's accounts. At that time, executives learned that Stiffler had been receiving incentive pay on the DFS account, but, as of that meeting, the company had not yet paid Stiffler any 2020 Quarter 4 incentive pay. Because DFS was coded as a core account—and not a diversified business account—in Hydroblend's accounting system, Hydroblend decided not to pay Stiffler incentive pay under the 2019 Contract for the DFS account. Hydroblend explained the decision to Stiffler on January 22, 2021. About two weeks later, on February 5, Stiffler's lawyer sent Hydroblend a letter demanding (1) payment of the 2020 Quarter 4 incentive pay due under the 2019 Contract and (2) rescission of the 2021 Contract. Hydroblend received the letter on February 8. The letter instructed all communications regarding legal matters to be directed solely to Stiffler's counsel, but stated Stiffler would continue to report to work.

On February 10, Hydroblend responded through counsel, indicating that no incentive pay was due and declining Stiffler's request to rescind the 2021 Contract. Counsel for Stiffler replied in a letter dated February 16, stating Hydroblend's letter refusing to pay the Quarter 4 incentive pay constituted termination without cause, and demanding payment of *severance* pay by February 20. No demand for *incentive* pay was made at this point other than a statement that legal action would be pursued with respect thereto. Stiffler filed a complaint the same day. On February 18, Hydroblend sent a letter confirming Stiffler's employment was at an end, and tendered base salary earned through February 1, 2021, along with Stiffler's final yearly incentive pay (the 2020 Quarter 4 payment). At no time before the initiation of this suit did either party make any attempt to resolve the dispute through mediation or arbitration.

Stiffler's complaint against Hydroblend raised claims for unpaid wages, breach of contract, wrongful termination, and a request to rescind the 2021 Contract. Stiffler alleged that "Hydroblend

effectively terminated [him] without cause as of February 10, 2021." Two weeks later, Stiffler filed an amended complaint that asserted the same claims but included a demand for severance pay plus treble damages. Hydroblend filed a motion to dismiss and compel arbitration as to Stiffler's claims for wrongful termination and rescission of the 2021 Contract. Hydroblend also filed a motion for summary judgment as to Stiffler's claim for unpaid wages of his Quarter 4 incentive pay under Idaho Code section 45-615. Multiple depositions, rounds of briefing, and a hearing on the merits followed.

The district court granted Hydroblend's motion to dismiss and compel arbitration with respect to Stiffler's claims of wrongful termination and rescission of the 2021 Contract. The district court also granted Hydroblend's motion for summary judgment as to Stiffler's unpaid wages claim, but only as it related to incentive pay. The district court determined that the incentive pay owed to Stiffler was timely paid by Hydroblend within 10 days of Stiffler's termination, as required by Idaho's Wage Claim Act (I.C. § 45-606(1)). However, because Hydroblend's summary judgment motion was limited to the issue of incentive pay, the claim for severance pay remained a viable issue before the court. Thus, the district court denied Hydroblend's motion for summary judgment as to the issue of severance pay.

While Hydroblend's motions were pending, Stiffler filed a motion and cross-motion for summary judgment as to his claim for treble damages on the incentive pay and severance pay prayed for in his amended complaint. He also sought to certify issues for appeal regarding his wrongful termination and rescission claims under the 2021 Contract. The district court issued an order clarifying its prior decision, denying Stiffler's motion for summary judgment as to breach of contract and wrongful termination (for being moot), and granted Stiffler's motion to certify the remaining issues for appeal. Because Hydroblend had requested additional time to respond to Stiffler's motion for summary judgment, the case was set for status conference to determine how the parties wished to proceed on the remaining claim for severance pay. Based on the clarification of the district court's prior decision, Stiffler withdrew the motion to certify and opted not to proceed with the appeal at that time.

The parties thereafter fully briefed Stiffler's remaining motion for summary judgment on the issue of breach of contract under the Wage Claim Act. The district court explained that "[t]he briefing made it clear that relief was being sought in Claim One [unpaid wages] on more grounds than the [district court] previously understood." The briefing also clarified that Stiffler's claim

5

sought damages for a breach of contract under the Wage Claim Act on two grounds: (1) failure to pay incentive pay and (2) failure to pay severance. It was at this time that Hydroblend filed a motion to reconsider or, in the alternative, a second motion to compel arbitration, seeking to resolve the severance issue from the district court's earlier decision on summary judgment. Stiffler filed a motion to strike multiple declarations from Hydroblend in response, which the district court denied.

In reviewing Stiffler's breach of contract claims, the district court concluded that the 2019 Contract controlled the issue of incentive pay earned during 2020. The relevant terms of that agreement are as follows:

> 2. COMPENSATION
>
> A. Annual Base Pay: . . .
>
> B. Incentive Pay: Executive shall receive incentive pay as set forth in this Paragraph 2(b) ("Incentive Pay"). Incentive Pay may be increased by the Company at any time, but Incentive Pay shall not be subject to an arbitrary or unreasonable reduction. Incentive Pay shall be prorated if Executive's employment is terminated during the year. Incentive Pay shall be calculated and paid as follows:
>
> (i) Definitions:
>
> "Diversified Business": are those accounts and business lines that are assigned to the Company's Diversified Business Unit. The Company's accounting system codes accounts and business lines, and corresponding revenue and expenses, as "Diversified Business." For purposes of this agreement, the Company's accounting system shall be determinative as to whether related Income/expenses is considered Diversified Business, but accounts and business lines will not be removed arbitrarily or unreasonably.

Although there was some evidence that DFS had been assigned or intended to be assigned to Stiffler's diversified business unit, and thus accrue incentive pay, the district court found that DFS was not coded as diversified business in Hydroblend's accounting system. However, the district court concluded a genuine issue of material fact remained as to whether DFS was meant to be coded as a diversified business account or whether Hydroblend had made incentive payments to Stiffler throughout 2020 in error, which precluded the district court from resolving these claims on summary judgment. As for severance pay, the district court concluded that summary judgment was unwarranted because the 2021 Contract controlled. The 2021 Contract provided that severance pay was only due in a termination without cause situation where Hydroblend's decision was "arbitrary" or constituted an "unreasonable action." Because this created a question of fact for the

6

jury, the district court determined that summary judgment on the severance pay claim would be inappropriate.

The final issue before the district court concerned Hydroblend's motion to reconsider and its arguments that the 2021 Contract controlled and mandated arbitration of the claims for unpaid wages on both severance and incentive pay. Stiffler responded that the 2019 Contract, "which does not have a mediation/arbitration provision, controls because the facts resulting in the termination arose out of Hydroblend's refusal to pay money earned under the 2019 contract." Based on the plain language of the two contracts—focusing on the merger and integration language—the district court concluded that "the language of the 2021 contract limits itself to dealing with compensation beginning in 2021 and claims arising out of the 2021 contract," while "the issue of incentive pay arises under the 2019 contract and is subject to the terms of that contract." The court then separated the claims of severance pay and incentive pay. Because Stiffler's claim for the incentive pay arose under the 2019 Contract, the court determined it was not subject to arbitration. However, the court dismissed Stiffler's claims for severance pay because it concluded they arose under the 2021 Contract and were therefore subject to its mediation and arbitration provision. The court then concluded that the severance pay claim needed to be dismissed so it could be arbitrated.

Stiffler timely appealed.

## II. STANDARDS OF REVIEW

"When reviewing the grant of a motion for summary judgment, we apply the same standard used by the district court in ruling on the motion." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010) (citing *Van v. Portneuf Med. Ctr.,* 147 Idaho 552, 556, 212 P.3d 982, 986 (2009)). Summary judgment is properly granted when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Van*, 147 Idaho at 556, 212 P.3d at 986 (quoting I.R.C.P. 56(c)). The court must construe the record in favor of the nonmoving party, drawing all reasonable inferences in that party's favor. *Id.* If it finds that reasonable minds could differ on conclusions drawn from the evidence presented, the motion must be denied. *Id.* The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *Id.*

7

"When ruling on a motion to compel arbitration, the district court applies the same standard as if ruling on a motion for summary judgment." *Wattenbarger*, 150 Idaho at 317, 246 P.3d at 970; *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007). Accordingly, the court exercises free review over questions of arbitrability and may draw its own conclusions from the evidence presented. *Mason*, 145 Idaho at 200, 177 P.3d at 947; *T3 Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 738, 744–45, 435 P.3d 518, 524–25 (2019). "A court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are to be 'resolved in favor of coverage.' " *Storey Constr., Inc. v. Hanks,* 148 Idaho 401, 412, 224 P.3d 468, 479 (2009) (quoting *Int'l Ass'n. of Firefighters, Local No. 672 v. City of Boise,* 136 Idaho 162, 168, 30 P.3d 940, 946 (2001)).

Determining the scope of an arbitration clause is a question of contractual interpretation. In determining the meaning of a contract, "[w]hen the language of a contract is clear and unambiguous," its meaning and legal effect are questions of law over which we exercise free review. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). "A contract is ambiguous if it is reasonably subject to conflicting interpretations," which will render interpretation of the contract a question of fact. *Id.* at 185–86, 75 P.3d at 746–47. The relevant inquiry in determining whether a contract is ambiguous is the meaning intended by the parties at the time of contracting, not at some future time. *Id.* at 185, 75 P.3d at 746.

### III. ANALYSIS

#### A. Stiffler is not entitled to treble damages on incentive pay under the Idaho Wage Claim Act.

In determining whether Stiffler is entitled to treble damages on his Quarter 4 incentive pay pursuant to the Wage Claim Act, we must review the district court's determination that Hydroblend complied with the Act by tendering incentive pay within the applicable time limit under Idaho Code section 45-606(1). If Hydroblend did not, Stiffler would be entitled to treble damages on incentive pay based on Idaho Code section 45-615(2). The district court granted Hydroblend's summary judgment motion on this issue of treble damages on finding that the Quarter 4 incentive pay was tendered within the statutory 10-day limit. The court also concluded that the 48-hour rule under Idaho Code section 45-606(1) did not apply. We agree with the district court's analysis and reasoning.

8

Before the district court, Stiffler alleged that he had been "effectively terminated . . . without cause as of February 10, 2021." Idaho's Wage Claim Act provides that an employer must pay all wages due within 10 days of termination, or within 48 hours "if the employee makes written request . . . for earlier payment of wages." I.C. § 45-606(1). Failure to comply with this rule may subject the employer to treble damages. I.C. § 45-615(2). The district court presumed for purposes of the summary judgment motion that termination occurred on February 10, as Stiffler alleged in his complaint. Because the final yearly incentive pay was tendered on February 18, the district court concluded that Hydroblend complied with the Wage Claim Act by tendering payment within the 10-day limit.

Likewise, the district court concluded that the 48-hour rule had not been triggered here. Idaho Code section 45-606(1) only requires wages to be paid within 48 hours "if the employee makes written request . . . for earlier payment of wages." Here, there was no specific written request from Stiffler for his incentive pay. His February 16 letter demanded *severance* pay, but only warned of imminent litigation in regard to his *incentive* pay:

> Mr. Stiffler demands 25% payment of his severance no later than February 20, 2021. Failure to timely remit payment shall constitute further illegal withholding of wages in violation of Title 45, Chapter 6, Idaho Code.

> Regarding the illegal withholding of Mr. Stiffler's Q4 Commission, Mr. Stiffler is left with no other recourse than to pursue a civil action to protect his contractual rights under law. A copy of the Complaint filed and served in the Third Judicial District Court for the County of Canyon shall be served in due course.

We agree with the district court's conclusion that this statement cannot be construed as a demand for payment earlier than the 10 days required under Idaho Code section 45-606(1).

On appeal, Stiffler argues that Hydroblend anticipatorily breached the 2019 Contract when it initially refused to pay his Quarter 4 incentive pay on January 20. He argues this issue is dispositive of the entire case, and he is owed treble damages after Hydroblend unambiguously repudiated its contractual obligation to pay Stiffler the incentive pay to which he was entitled. He adds that "[t]he district court notably failed to address the legal doctrine of anticipatory breach in its legal decision, and ignored the legal significance of [Hydroblend's] express refusal to pay Stiffler's wages on January 22 and February 10, 2021." Yet he also contends that "[n]o incentive pay is in dispute, only treble damages."

Stiffler ignores that the incentive pay *is* in dispute. The district court determined that questions of fact remained over whether the 2019 Contract was modified concerning incentive pay

9

and, if so, whether there was a breach of that agreement. The district court denied summary judgment on these issues because they had to be resolved by a fact finder. The only question examined, and answered, by the district court at the summary judgment stage was whether Hydroblend paid Stiffler the Quarter 4 incentive pay within 10 days of Stiffler's termination. I.C. § 45-606(1). The district court did not make an affirmative finding as to the date of termination, nor did it analyze whether Stiffler was entitled to these wages. It only addressed timeliness under the Wage Claim Act to determine whether treble damages should be assessed against Hydroblend on the incentive pay tendered to Stiffler. Because Stiffler's complaint and arguments below alleged a termination date of February 10, 2021—and Hydroblend tendered payment on February 18—the incentive-pay wages were timely tendered under Idaho Code section 45-606(1)'s 10-day deadline.

Stiffler also argues that Idaho has a bright line rule when it comes to the award of treble damages under the Idaho Wage Claim Act. He points to *Hales v. King*, in which the Idaho Court of Appeals held that an employee's right to recover treble damages "was fixed upon the filing of his complaint." 114 Idaho 916, 922, 762 P.2d 829, 835 (Ct. App. 1988). Stiffler, however, has misunderstood the holding in *Hales*. In that case, the Court of Appeals determined that an employee's "right to wages accrued upon his resignation" while his "cause of action for treble damages" accrued on the eleventh day "when he knew he would not be compensated for unpaid work." *Id.* at 920–22, 762 P.2d at 833–35 (citing *Gilbert v. Moore*, 108 Idaho 165, 697 P.2d 1179 (1985)). It was not the act of *filing* a complaint that implicated the treble damages. Rather, the treble damages accrued because Hales commenced his action on the *eleventh* day following his resignation—the day his employer's response was statutorily late. The Wage Claim Act's penalty triggered on that date, and it ripened Hales' cause of action. The complaint was simply filed at the same time. *See* 114 Idaho at 921–22, 762 P.2d at 834–35.

Alternatively, Stiffler argues that whether Hydroblend was required to pay Stiffler the incentive pay under the 2019 Contract is moot because Hydroblend's act of tendering payment was a binding admission that Stiffler was entitled to the incentive pay. Stiffler has not cited a rule under Idaho law for this position, nor has the district court made a finding as to whether Stiffler was entitled to incentive pay on these grounds. Like his arguments of an anticipatory breach, the district court has not rendered a decision on the issue. The district court only concluded that treble damages could not be owed under Stiffler's termination timeframe. It never determined whether Stiffler was entitled to the disputed incentive pay wages—either as a result of a breach or because

of Hydroblend's payment under Idaho Code section 45-606. Likewise, the district court has never addressed Stiffler's contention that he was entitled to contractual protections of advanced notice, warning, and opportunity to cure unreasonable reductions in pay under the 2019 Contract. These issues ultimately concern Stiffler's contention of a breach of contract and are not properly before this Court. We will not address them for the first time on appeal. *See Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 131, 176 P.3d 126, 136 (2007) ("an appellate court will not decide issues presented for the first time on appeal").

In sum, we agree with the district court that treble damages were unwarranted here. Examining the facts in the light most favorable to Stiffler, and drawing all reasonable inferences in his favor, Hydroblend was entitled to summary judgment as a matter of law on this claim. Genuine issues of material fact also precluded an award of summary judgment as to whether the 2019 Contract was breached or modified. Thus, we affirm the district court on these grounds.

**B. The 2021 Contract governs Stiffler's claim for severance pay and, therefore, this dispute is subject to arbitration.**

Stiffler next argues that severance pay and treble damages are owed under the 2019 Contract after he "properly demanded payment of severance for his [t]ermination 'not for cause' on February 16, 2021." He calculates his severance pay, with treble damages, at $1,747,026.80, and contends that Hydroblend effectively discharged him without cause ("not for cause") under his employment agreement by "refusing to tender Stiffler's [Quarter 4] incentive pay for DFS and using his sales to other undisputed accounts to illegally withhold and 'claw back' payments already issued" in earlier quarters. Hydroblend argues that the district court did not err in finding that the 2021 Contract governed the entitlement to severance pay and, therefore, it was subject to arbitration. It also argues that the motion to compel arbitration "is not subject to review through the litigation process." We agree that the 2021 Contract governs Stiffler's severance pay claim, but disagree with Hydroblend's assertion that we lack jurisdiction to review the severance pay claim on appeal.

*1. This Court has jurisdiction to hear Stiffler's appeal on the severance pay claims.*

We will first address Hydroblend's arguments on justiciability and jurisdiction, which are questions of law over which this Court exercises free review. *Doe v. Doe*, 158 Idaho 614, 616, 349 P.3d 1205, 1207 (2015). Hydroblend argues that "[a] decision compelling arbitration is not subject to review through the litigation process," and that review of dismissing and compelling arbitration on "Claims Two and Three" [wrongful termination and rescission of the 2021 Contract] are moot.

11

Stiffler responds that the dismissal of his "claim to severance under the 2019 contract is an appealable final order, just like the order of dismissal in *Dan Wiebold Ford, Inc. v. Universal Computer Consulting Holding, Inc.*, 142 Idaho 235, 240, 127 P.3d 138, 143 (2005)." Further, "there is a final judgment dismissing all of [his] claims, which is appealable as a matter of right pursuant to I.A.R. 11(a)(1)." We agree.

In *Dan Wiebold*, this Court addressed a similar jurisdictional challenge where the lower court dismissed the plaintiff's lawsuit on finding all claims were subject to an arbitration provision of a contract between two corporations. 142 Idaho at 237–38, 127 P.3d at 140–41. This Court determined that the district court's order dismissed the lawsuit but did not compel the plaintiff to participate in arbitration. *Id.* at 238, 127 P.3d at 141. Because "[a] district court's order dismissing a lawsuit is a final judgment which can be appealed," this Court had jurisdiction to hear the appeal. *Id.* Here, the issue concerns Stiffler's severance pay, which was a claim the district court dismissed but did not order the parties to arbitrate. There is also a final judgment dismissing most of Stiffler's other claims. Thus, we have jurisdiction to review the appeal.

### 2. The 2021 Contract governs Stiffler's claim for severance pay.

To determine whether Stiffler's claim for severance pay was subject to arbitration proceedings and incorrectly dismissed, we must determine whether the 2019 Contract or 2021 Contract controls Stiffler's claims for severance and termination. Because this issue presents a question of contract interpretation, we begin with the language in the documents. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010). The interpretation of a clear and unambiguous contract is a question of law, and we must construe the language "in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id.* (quoting *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001); *Fletcher v. Lone Mountain Rd. Ass'n*, 162 Idaho 347, 351, 396 P.3d 1229, 1233 (2017)). On the other hand, "[a] contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ. Ass'n*, 148 Idaho at 633, 226 P.3d at 1280. Determining whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact. *Id.*

Both the 2019 Contract and the 2021 Contract allow for severance pay, but the agreements differ in how they define termination of employment. The 2019 Contract allows for severance pay where an employee is terminated "Not for Cause," including "an arbitrary or unreasonable

12

demotion or reduction in *pay*." (Emphasis added.) The 2021 Contract, in contrast, allows for severance pay for termination "without cause" under several scenarios, including where there is "any arbitrary or unreasonable reduction in Employee's *Base Pay*." (Emphasis added.) The difference between "pay" (2019) and "base pay" (2021) in these definitions indicates that "pay" under the 2019 Contract includes both base pay and incentive pay.

Importantly, the 2021 Contract specifies that it came into effect on January 1, 2021, and constitutes the *entire* agreement between the parties, superseding and replacing all prior agreements:

> On the Effective Date of this Agreement, this Agreement will supersede and replace all prior agreements between the parties hereto, whether in writing or otherwise, relating to the subject matter hereof. On the Effective Date of this Agreement, this Agreement will contain the entire agreement of the parties, and no representations, inducements, promises, or agreements, oral or otherwise, not embodied herein, will be of any force or effect.

The 2021 Contract also contains a mediation and arbitration provision, which states: "In the event of any controversy or claim arising out of or relating to this Agreement, or a breach thereof, the parties hereto shall first attempt to settle the dispute by mediation." Where settlement is not reached at mediation, "any unresolved controversy or claim shall be settled by arbitration."

"It is well settled that the terms of a written contract may be varied, modified, waived, annulled, or wholly set aside by any subsequently executed contract, whether that contract be in writing or parol." *Silver Syndicate, Inc. v. Sunshine Min. Co.*, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979). "To have the effect of complete rescission, the new contract must either explicitly rescind the earlier contract, or deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together." *Id.* Where "a subsequently executed agreement specifically references and relies on a former agreement, the two are to be interpreted together, if possible." *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002).

Stiffler would have this Court determine that the 2019 Contract controls because Stiffler's wage dispute and claims concern the terms and pay received under the 2019 Contract. He reminds us that there are no wages in dispute from 2021 forward. However, the new contract clearly rescinded and replaced the old one. There is an express provision explaining that the 2021 Contract will "supersede and replace *all* prior agreements between the parties." (Emphasis added.) The 2021

13

Contract "contain[s] the entire agreement of the parties, and no representations, inducements, promises, or agreements, oral or otherwise, not embodied herein, will be of any force or effect." Even Stiffler concedes in his briefing that he "completed performance of the 2019 Contract when it ended on December 31, 2020," at least for the "purposes of incentive compensation." Additionally, the two agreements' terms—including the severance provisions—are too inconsistent to be considered merged. Pursuant to *Silver Syndicate*, the 2021 Contract "explicitly rescind[ed] the earlier contract," and it "deal[s] with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution." 101 Idaho at 235, 611 P.2d at 1020.

Stiffler's contention that *all* the disputed wages must be controlled by the 2019 Contract is unavailing. The 2019 Contract may control the wages earned in those periods—including the Quarter 4 incentive pay at issue in this litigation—but *severance pay* only comes into effect upon termination. The date of termination occurred between February 10 and February 16, 2021, after the 2021 Contract came into effect and rescinded all prior agreements between the parties. Thus, severance pay is controlled by the 2021 Contract. It was the employment agreement in effect at the time of Stiffler's termination, and it requires all disputes arising under it to proceed through mediation and arbitration. Accordingly, we agree with the district court's decision to deny Stiffler's motion for summary judgment on severance pay. Because the 2021 Contract's mediation and arbitration provision governs severance and termination, Stiffler was not entitled to summary judgment on this claim as a matter of law.

> 3. *The district court did not err in separating Stiffler's claim for unpaid incentive wages from his claim for severance pay.*

Stiffler next argues that the district court "illegally split[]" his causes of action for unpaid wages, and that it makes no "legal sense to litigate different remedies of the same dispute before two separate tribunals." "Claim splitting" often arises in the context of claim preclusion and res judicata, and the general rule is that damages sustained or accrued from a single wrongful act must be claimed and recovered in one action. *See Diamond v. Farmers Grp., Inc.*, 119 Idaho 146, 149, 804 P.2d 319, 323 (1990); *Wing v. Hulet*, 106 Idaho 912, 917, 684 P.2d 314, 319 (Ct. App. 1984). *See also Claim splitting*, Am. L. Prod. Liab. 3d § 55:8 (2023). As this Court has held: "a valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Diamond*, 119 Idaho at 150, 804 P.2d at 323.

14

Here, however, claim splitting does not apply. There has never been a prior adjudication of these claims. Rather, the question at issue concerns the proper forums for the adjudication of issues arising under different employment agreements. Under the Uniform Arbitration Act, a district court confronted by a motion to dismiss or stay proceedings conducts the inquiry of whether there is an agreement to arbitrate. *Loomis, Inc. v. Cudahy*, 104 Idaho 106, 109, 656 P.2d 1359, 1362 (1982). If a dispute is arbitrable, a court's review of the merits is inappropriate and "would in many instances emasculate the benefits of arbitration." *Id.* The district court determined that severance pay was an arbitrable claim controlled by the 2021 Contract but that the 2019 Contract controlled the wage claim for incentive pay. In short, two separate issues arose under Stiffler's cause of action and the district court only had authority to decide one of them. Thus, the district court properly split the issues, retained the incentive pay issue for litigation in district court, and concluded that Stiffler's entitlement to severance pay had to be resolved through arbitration.

While Stiffler compares his case to *Hindmarsh v. Mock*, 138 Idaho 92, 57 P.3d 803 (2002), we do not agree that the case is helpful to his cause. In *Hindmarsh*, a plaintiff attempted to split her claims arising from the same automobile collision with a defendant. 138 Idaho at 93, 57 P.3d at 804. She first sued the defendant in small claims for property damage. A year later, she sued the same defendant in district court for personal injuries sustained in the crash. *Id.* This Court barred this relitigation attempt and explained that the "plaintiff chose her venue." *Id.* at 95, 57 P.3d at 806. "[S]he should not only be able to take advantage of the benefits of that choice, but should also be bound by the consequences." *Id.* Like *Hindmarsh*, Stiffler chose his venue by entering into an arbitration agreement with Hydroblend. He agreed to mediate and arbitrate all claims arising under the 2021 Contract, and the district court simply enforced the agreement Stiffler made. The court explained that the claims had to be split where severance was contractually obligated to be decided through mediation or arbitration. Only the incentive-pay claim was a decision for judicial determination.

### 4. The dismissal of Stiffler's claims was improper.

The district court erred, however, in concluding that the claims subject to arbitration should be dismissed and "fully disposed" of, rather than staying the proceedings in district court and ordering the claims be arbitrated. The Uniform Arbitration Act, which Idaho adopted in 1975, mandates that

> [a]ny action or proceeding involving an issue subject to arbitration *shall be stayed* if an order for arbitration or an application therefor has been made under this

15

> section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

I.C. § 7-902(d) (emphasis added). A court must also "order the parties to proceed with arbitration" where a party shows a valid arbitration agreement. I.C. §§ 7-902(a), 7-901. Likewise, the Act provides for court confirmation of arbitration awards on application of a party. I.C. § 7-911. The arbitrator's award is not enforceable until a court enters judgment on it. *Bingham Cnty. Comm'n v. Interstate Elec. Co., a Div. of L.E. Myers Co.*, 108 Idaho 181, 183, 697 P.2d 1195, 1197 (Ct. App. 1985).

Here, the district court correctly determined that severance and termination were governed by the 2021 Contract, and, consequently, were subject to the agreement's arbitration provision. But the district court erred in dismissing Stiffler's claims to "fully dispose[]" of them. The procedures mandated under the Uniform Arbitration Act provide for courts to retain jurisdiction while parties arbitrate claims, staying proceedings until confirmation of an award (I.C. § 7-911), including the award of costs and fees (I.C. § 7-910), is entered by the court. Rather than "dispose" of Stiffler's arbitrable claims, the district court should have stayed the proceedings until the parties returned from arbitration for a confirmation and final judgment, or otherwise moved for dismissal of the case. Thus, we reverse the district court's decision insofar as it incorrectly dismissed Stiffler's claims.

### C. The district court did not err in determining that the claims for wrongful termination and rescission of the 2021 Contract were arbitrable and governed by the 2021 Contract.

Stiffler raised three claims in his original and amended complaints. The first regarded unpaid wages, including incentive pay (the Quarter 4 commission) and severance pay under Idaho's Wage Claim Act. The second was for wrongful termination, and the third concerned "voiding and/or rescission" of the 2021 Contract. Like his argument over severance pay, Stiffler contends that the 2019 Contract governs his claims and argues that they were not subject to the arbitration provision in the 2021 Contract. In making these arguments, Stiffler raises other related issues, including an argument that the arbitration provision should be read "narrowly," and that Hydroblend waived its right to arbitration. Hydroblend responds that the "incentive pay component of Claim One [is] fundamentally distinct from the Arbitrable Claims," it has not waived its right to arbitrate, and the claims arising under the 2021 Contract were subject to mandatory arbitration. We will address each argument in turn.

16

*1. The district court did not err in referring Stiffler's additional claims to arbitration.*

Stiffler contends that the arbitration clause of the 2021 Contract must be read "narrowly" to be "limited only to claims 'arising out of' the 2021 [Contract]." He cites federal jurisdictions to support his position. Hydroblend responds that Stiffler negotiated and assented to the 2021 Contract, and is ultimately trying to "sidestep the applicability of the 2021 [Contract] by saying that his termination—which he wrongly asserts triggered a right to severance—was the result of a dispute under the incentive pay provisions of the 2019 [Contract]."

The arbitrability of a claim is a question of law to be decided by the court. *Storey Constr.*, 148 Idaho at 412, 224 P.3d at 479. *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."). "This Court has recognized a strong public policy which favors arbitration." *Storey Constr.*, 148 Idaho at 412, 224 P.3d at 479. Arbitration agreements are "encouraged and given explicit recognition as effective means to resolve disputed issues," *id.*, with doubts "resolved in favor of arbitration." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 201, 177 P.3d 944, 948 (2007). "A court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Storey Constr.*, 148 Idaho at 412, 224 P.3d at 479 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Like the issue of severance pay, Stiffler's claim for wrongful termination arises under the 2021 Contract. Not only did Stiffler's termination occur in 2021, after the 2019 Contract was superseded and replaced, but Stiffler's remaining claim also plainly deals with "voiding and/or rescission" of the 2021 Contract. He is expressly requesting rescission of the 2021 Contract itself. Because these claims deal with contesting the validity of the agreement, or alleged conduct under its terms, these claims are disputes "arising out of or relating in any way to" the 2021 Contract. As we noted in discussing severance pay, the 2021 Contract was the only employment agreement in effect at the time of Stiffler's termination.

While Stiffler is correct that the basis of his termination stems from Hydroblend's failure to pay the Quarter 4 incentive pay owed under the 2019 Contract, the applicable provisions governing his termination are those in effect at the time of his termination in 2021. As the district court articulated: "although some of the relevant facts occurred while the 2019 contract was in

effect, the termination itself occurred, and was a result of, events that occurred subsequent to the execution of the 2021 contract." Thus, we affirm the district court's determination that the claims for wrongful termination and contract rescission are governed by the 2021 Contract's arbitration provision.

Stiffler points to other jurisdictions to support his argument that this Court must read the arbitration provision's language through a "narrow" lens, instead of a "broad" interpretation, to conclude that the "narrow 2021 mediation/arbitration clause does not apply to the breach of the 2019 contract under the plain language of the agreement itself." This argument is unavailing. Not only does Stiffler rely on rules from other jurisdictions, but his argument negates the plain and broad language in the 2021 Contract.

For example, Stiffler relies on a federal case that instructed courts to consider two questions in determining the scope of an arbitration clause. *Mut. Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992). *Zimmerman* determined that a court must consider two questions: "(1) is the arbitration agreement broad or narrow?; (2) if narrow, does the dispute involve a 'collateral' agreement?" *Id.* "If a clause is narrow, the court is the body to determine whether the dispute or the conduct in issue falls within the arbitration clause." *Id.* Additionally, "[i]f the court determines the dispute falls within the scope of the arbitration agreement, it must refer the dispute to arbitration without considering the merits." *Id. Zimmerman* recognized that the language at issue—"any dispute or difference hereafter arising"—was "clearly broad," but there were additional words of limitation that meant the clause was not a general arbitration clause for "any" dispute. *Id.* at 870. This limiting language included: "as a condition precedent to any right of action hereunder," and "with reference to the interpretation, application, or other effect of this Agreement." *Id.* (brackets omitted).

No such language exists in the 2021 Contract. The mediation provision states that *any* controversy or claim arising out of the employment agreement is subject to mediation and arbitration. There are no words that narrow this interpretation.

> In the event of *any controversy or claim arising out of or relating to this Agreement, or a breach thereof*, the parties hereto shall first attempt to settle the dispute by mediation. The party seeking to mediate *any controversy or claim arising out or relating to this Agreement* shall give the other party advance written notice of its intent to mediate, and such written notice shall describe in detail the alleged controversy or claim at issue. . . . If settlement is not reached at mediation, *any unresolved controversy or claim* shall be settled by arbitration as set forth . . . below.

(Emphasis added.) Similarly, the arbitration provision controls any controversy or claim arising out of, or related in any way, to the 2021 Contract:

> *Any dispute, controversy or claim arising out of or relating in any way to this Agreement*, including, *without limitation*, any dispute concerning the construction, validity, interpretation, enforceability or breach of this Agreement, that is not settled via mediation shall be exclusively resolved by binding arbitration upon a party's submission of the dispute to arbitration.

(Emphasis added.) Both provisions repeatedly use the broad language that "any controversy or claim arising out of or relating to" the agreement is subject to mediation or, where mediation is unsuccessful, arbitration. There is no limiting language to narrow the scope of the claims subject to this dispute resolution. Having determined that the dispute falls within the scope of the 2021 Contract's arbitration agreement, the district court was correct to refer the dispute to arbitration without considering the merits of Stiffler's claims.

### 2. *Hydroblend did not waive its right to arbitration.*

Stiffler also contends that Hydroblend waived its right to arbitration by availing itself of the district court's jurisdiction on filing an answer to his complaint and seeking summary judgment on the incentive pay portion of his first claim. Hydroblend argues it "has always recognized that the incentive pay component of Claim One arises under the 2019 [Contract]," and the district court was the appropriate forum to seek relief on that issue. Hydroblend is correct.

Stiffler points us to the Ninth Circuit, which has concluded that "the question whether a party waived its right to arbitrate on the basis of its litigation conduct is a question of arbitrability" and is a dispute "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). "Seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." *Newirth by & through Newirth v. Aegis Senior Cmtys.*, *LLC*, 931 F.3d 935, 941 (9th Cir. 2019). The Ninth Circuit has since instructed that a court must "consider the totality of the parties' actions," and "ask whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate.' " *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 473 n.19 (9th Cir. 2023)).

This case law is unhelpful to Stiffler's claims. Not only are the cases not binding authority in Idaho, but the facts are markedly different from the situation at bar. Both *Martin* and *Newirth*

19

dealt with long periods of litigation on the merits of arbitrable claims. In *Martin*, the defendants "spent seventeen months litigating the case," including "devoting 'considerable time and effort' to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition." 829 F.3d at 1126. Similarly, in *Newirth*, the parties spent 11 months "actively engaged in the discovery process." 931 F.3d at 939. Here, however, Hydroblend sought arbitration on arbitrable claims the same day it filed its answer to Stiffler's complaint. It also only sought summary judgment on one claim arising under the 2019 Contract, which was the issue of incentive pay. Hydroblend never sought judicial relief on the merits of claims it believed to be, and were later found, arbitrable. Hydroblend sought only to dismiss and compel arbitration on the claims arising under the 2021 Contract.

Accordingly, we cannot agree with Stiffler that there was litigation conduct by Hydroblend that amounted to a waiver of its right to arbitration. Hydroblend appears to have immediately sought to enforce its rights to arbitration under the 2021 Contract, and sought a judicial remedy only on the incentive pay issues that arose under the earlier 2019 Contract (which lacked a binding arbitration provision). Thus, Hydroblend did not waive its right to arbitration on any of the claims.

### 3. Stiffler's alternative arguments are unavailing.

In addition to the preceding arguments, Stiffler raises two alternative arguments on appeal challenging whether the 2021 Contract and its arbitration provision are found to be controlling. First, he argues that Hydroblend materially breached the contract by withholding wages and retroactively reducing his pay. He contends that this breach excused his performance and obligation to arbitrate. This argument is circular in its reasoning. Stiffler claims that he is excused from an enforceable arbitration provision because of an alleged breach by Hydroblend, but those are facts and merits which he must first prove *in arbitration*. The very performance he claims excuses him from arbitration cannot be established outside of it.

Even if this Court were to review Stiffler's breach-of-contract argument on appeal, there is no decision from the lower court to review. Whether Hydroblend breached its employment contract with Stiffler is not a determination this Court can make for the first time on appeal. *See Neighbors for a Healthy Gold Fork*, 145 Idaho at 131, 176 P.3d at 136 ("review on appeal is limited to those issues raised before the lower tribunal and that an appellate court will not decide issues presented for the first time on appeal."). Indeed, the district court specifically concluded

that "[w]hether the refusal to pay 2020 Q4 incentive pay was 'an arbitrary or unreasonable demotion or reduction of pay' is . . . a question of fact, making summary judgment not appropriate." We will not usurp the district court's role as the finder of fact and make the determination for the first time on appeal.

Second, Stiffler contends the 2021 Contract was not a "knowing, intelligent, and voluntary waiver" of his constitutional right to a trial by jury. Stiffler specifically argues that the 2021 Contract "does not make any reference to [his] constitutional right to trial by jury," and that the "ambiguity of [Hydroblend's] proposed arbitration provision is a substantive and procedural violation of [his] Due Process rights." Once again, this was not a decision made by the district court, and—as Hydroblend points out—Stiffler ignores the plain language of his agreement that "[a]ny dispute, controversy or claim arising out of or relating in any way to this Agreement," including its enforceability, "shall be exclusively resolved by binding arbitration . . . ."

Accordingly, we are unpersuaded by Stiffler's alternative arguments that Hydroblend's motion to compel arbitration should have been denied.

### D. Neither party is entitled to attorney fees on appeal.

Both parties seek attorney fees on appeal. Stiffler seeks an award of attorney fees under Idaho Code section 45-615(2) of the Wage Claim Act, while Hydroblend seeks fees under Idaho Code sections 12-120(3) and 12-121. This Court has previously determined that section 12-121 is not an appropriate source for awarding attorney fees in wage claim disputes, even where other claims were involved. *See Bilow v. Preco, Inc.*, 132 Idaho 23, 33, 966 P.2d 23, 33 (1998) (denying attorney fees where an employee sought an award under I.C. § 12-120(3), alleging unpaid wages and breach of contract). "The [Wage Claim] Act provides any judgment awarded to a plaintiff under the Act 'may include all costs and attorney's fees reasonably incurred in connection with the proceedings.' " *Lunneborg v. My Fun Life*, 163 Idaho 856, 873, 421 P.3d 187, 204 (2018) (quoting I.C. § 45-615). In short, "Idaho Code [sections] 45-615 and 45-617 are the exclusive code sections under which an employee may recover attorney fees whenever the underlying cause of action is a wage claim pursuant to I.C. § 45–617(4)." *Bilow*, 132 Idaho at 33, 966 P.2d at 33. *See also Hawes v. W. Pac. Timber, LLC*, 167 Idaho 896, 917, 477 P.3d 950, 971 (2020). Likewise, Idaho Code section 45-612(2) is the "exclusive remedy for attorney fees available to an employer when an employee has brought a claim for wages." *Polk v. Larrabee*, 135 Idaho 303, 315, 17 P.3d 247, 259 (2000).

21

Stiffler has raised multiple issues before this Court, but his underlying cause of action is a wage claim dispute brought under Idaho's Wage Claim Act. He is the only party who has claimed attorney fees under the correct section of the Idaho Code. However, Stiffler failed to establish that he is "entitled to recover from the defendant either the unpaid wages plus the penalties . . . or damages in the amount of three (3) times the unpaid wages found due and owing, whichever is greater." I.C. § 45-615(2). Thus, we will not make an award of attorney fees to either party in this appeal.

## IV. CONCLUSION

On reviewing the merits on appeal, we conclude that the district court's orders should be affirmed in part and reversed in part. We reverse the district court's dismissal of Stiffler's arbitrable claims because they should have been stayed, not dismissed. However, we affirm the district court's determination that the 2019 Contract controls the issue of incentive pay while the remaining claims arose under the 2021 Contract and its arbitration agreement. As the prevailing party, Hydroblend is entitled to costs on appeal pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN, CONCUR.