# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51723-2024

| | |
|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| ---------------------------------------------------- | ) Boise, September 2024 Term |
| JOHN DOE I and JANE DOE I, husband and wife, | ) ) |
| | ) Opinion filed: March 27, 2025 |
| Petitioners-Appellants, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) **SUBSTITUTE OPINION** |
| | ) **THE COURT'S PRIOR** |
| JOHN DOE (2024-23), | ) **AMENDED OPINION DATED** |
| | ) **JANUARY 9, 2025, IS** |
| Respondent. | ) **WITHDRAWN** |
| | ) |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Oneida County. Robert C. Naftz, District Judge. Eric Hunn, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

Parsons Behle & Latimer, Idaho Falls, for Appellants. John E. Cutler argued.

Beard St. Clair Gaffney PA, Idaho Falls, for Respondent. Kristopher D. Meek argued.

---

ZAHN, Justice.

This case concerns a termination of parental rights and adoption proceeding. Jane Doe 1 ("Mother") and John Doe ("Father") had a child out of wedlock. Approximately eight months after the birth of the child, Mother and her fiancé (collectively "Mother") filed a petition to terminate Father's parental rights and allow Mother's fiancé to adopt the child. Mother did not serve a copy of the petition on Father and he did not participate in the proceedings. Following a hearing, the magistrate court issued a judgment terminating Father's parental rights and granting the adoption.

After learning of the judgment, Father filed two motions to set aside the judgment pursuant to Idaho Rule of Civil Procedure 60(b). This appeal concerns Father's second motion, in which

1

Father argued that the judgment was void under Rule 60(b)(4) because his constitutional due process rights had been violated due to lack of notice. The magistrate court denied the motion, finding Father's claim for relief was barred by the doctrine of res judicata. The district court disagreed, reversed the magistrate court's order, and remanded the matter for the magistrate court to consider the motion on its merits.

Mother appeals the district court's decision reversing the magistrate court and argues that Father's Rule 60(b)(4) motion is barred by several procedural doctrines, primarily res judicata and waiver. We hold that Father's Rule 60(b)(4) motion alleged a fundamental error that deprived him of his right to procedural due process, which deprived him of his fundamental constitutional right to raise his child. Given these allegations, we conclude that the fundamental error doctrine applies to create an exception to the doctrines of res judicata and waiver. We therefore affirm the district court's decision and remand this matter to the magistrate court to hold an evidentiary hearing to determine whether Father's Rule 60(b)(4) motion was timely and if so, whether the termination and adoption judgment is void.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were in a romantic relationship from approximately May 2019 until June 2021. On June 3, 2021, a child was born to Mother and Father out of wedlock. Father did not sign the child's birth certificate. Sometime in June, following child's birth, Mother ended her romantic relationship with Father.

Approximately eight months after the birth of the child, on February 17, 2022, Mother and her new fiancé, John Doe 1, jointly filed a "Petition for Termination of Parent-Child Relationship and Petition for Adoption" with the magistrate court. Mother sought to terminate Father's parental rights and have John Doe 1 adopt the child. Mother did not serve a copy of the petition on Father and alleged that she was not required to provide Father with notice because she and Father were never married, Father never developed a substantial relationship with the child or financially supported the child, and Father was not listed on the child's birth certificate.

On March 1, 2022, the magistrate court held a hearing on Mother's petition, at which Mother and her fiancé testified. No transcripts or court minutes from that hearing are in the record on appeal. On the same day, the magistrate court entered a judgment terminating Father's parental rights and granting the adoption of the child by Mother's fiancé. The magistrate court entered the judgment without providing notice to Father, concluding that Father had waived any right to notice

2

of the proceedings by failing to comply with Idaho Code section 16-1504, which describes when consent from another party is required for adoption. The magistrate court concluded that Mother's fiancé was fit and proper to adopt the child and that it was in the best interest of the child to terminate Father's parental rights and allow the adoption.

The next day, Father filed a "Petition for Filiation, Custody and Support" asking the magistrate court for "joint legal and residential custody of the minor child" and proposing a fifty-fifty physical custody schedule and an approximately equal sharing of the financial obligations of the child. The record is unclear concerning whether, at the time he filed the petition, Father was aware of the judgment entered the prior day. The same day, Father also registered with the Idaho Department of Health and Welfare as the putative father of the child.

Father also filed a motion to set aside the judgment approximately a week after it was entered. His written motion cited Idaho Rule of Civil Procedure 60(b)(4). Father argued to reopen the termination and adoption proceedings, contending that he had maintained a consistent and substantial connection with the child. Father contended that Mother had perpetrated fraud upon the magistrate court by failing to name him in the action when Mother knew he was the father and Mother had actively hidden the termination and adoption proceedings from Father. Father did not appeal the adoption and termination judgment.

In support of his motion, Father filed an affidavit in which he described his relationship and frequent visits with the child and his attempts to support the child financially. Father alleged that Mother and her family made him promise to not talk to a lawyer, and in return, he would receive ample time with the child. Father also filed seven affidavits from family members and friends describing Father as a good and caring father and recounting the over ninety visits that Father had with the child in the eight-month period before his parental rights were terminated. Father also attached to his declaration numerous photos of him and his family with the child. Father stated that he was unaware that Mother was engaged and that he received no notice that his parental rights were going to be terminated. Father alleged that Mother had a deliberate plan to terminate his parental rights without providing him notice. Mother opposed the motion, arguing that Idaho law barred Father from challenging the termination and adoption judgment because Father failed to fulfill his statutory duties as a putative father. Mother did not present any evidence to rebut Father's evidence that he had developed a relationship with the child but instead argued that his evidence was insufficient.

The magistrate court held oral argument on Father's motion to set aside. During oral argument, Father clarified that he was arguing that the judgment was procured by fraud and should therefore be set aside pursuant to Rule 60(b)(3), and that he was not alleging that it was a void judgment pursuant to 60(b)(4). Based on the transcript of the hearing, it appears that the parties and the magistrate court treated the motion as a Rule 60(b)(3) motion. The magistrate court denied the motion and concluded that there was no fraud that would permit the court to set aside the judgment under Rule 60(b)(3) because there was no evidence in the record that Father was fraudulently prevented from taking the actions to establish paternity required by Idaho law.

Father's attorney attempted to appeal the magistrate court's order but failed to properly perfect his appeal to the correct court. As a result, the magistrate court's order denying Father's first motion to set aside became a final order.

Father then hired a new attorney. On October 17, 2022, Father filed a second motion to set aside the adoption and termination judgment pursuant to Rule 60(b)(4) and (6) supported by additional evidence establishing his repeated visitation with, and financial support of, the child. Father argued the judgment was void and should be set aside pursuant to Rule 60(b)(4) because his due process rights were violated, and alternatively, that the unique and compelling circumstances of this case justified setting aside the judgment pursuant to Rule 60(b)(6). In support of his motion, Father cited this Court's decision in *Jane Doe I v. John Doe II (2022-06)* (*In re John Doe II*), 170 Idaho 901, 517 P.3d 830 (2022), which this Court decided following the denial of Father's first motion to set aside. In that case, we held that Idaho's adoption statutes may be unconstitutional as applied in certain circumstances, specifically those where a biological father has a "biology plus relationship" with the child. *Jane Doe I (2022-06)*, 170 Idaho at 911–12, 517 P.3d at 840–41.

Mother filed a motion to dismiss Father's Rule 60(b)(4) motion, raising several arguments, including that the motion was procedurally barred by res judicata and should be dismissed. Once again, Mother did not present any evidence contesting Father's evidence but argued that his evidence was insufficient to establish a "biology plus relationship." Following a hearing, the magistrate court issued a written decision granting Mother's motion and concluding that Father's Rule 60(b)(4) motion was barred by res judicata. The magistrate court also concluded that a Rule 60(b)(4) motion could not be used as a substitute for an appeal, and Father's failure to properly appeal the denial of his first motion to set aside barred his second motion under Rule 60(b)(6).

Father appealed the denial of his Rule 60(b)(4) motion to the district court. Father argued that res judicata did not bar his Rule 60(b)(4) motion because the elements of claim preclusion and issue preclusion were not met and there is no court rule or caselaw barring a Rule 60(b)(4) motion. Father did not address that portion of the magistrate court's decision denying him relief under Rule 60(b)(6). Father asked the district court to remand the case back to the magistrate court to hold an evidentiary hearing on whether Father's due process rights were violated by the termination and adoption judgment.

The district court reversed the magistrate court, concluding that because Father's motions were within the same lawsuit, res judicata did not bar Father's Rule 60(b)(4) motion. The district court remanded the case for the magistrate court to determine the merits of Father's Rule 60(b)(4) motion. Mother timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the district court erred in reversing the magistrate court's dismissal of Father's Rule 60(b)(4) motion.
2. Whether either party is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *O'Holleran v. O'Holleran*, 171 Idaho 671, 673, 525 P.3d 709, 711 (2023) (quoting *Kelly v. Kelly*, 171 Idaho 27, 34, 518 P.3d 326, 333 (2022)). "This Court is procedurally bound to affirm or reverse the decisions of the district court." *Id.* (internal quotation marks and citation omitted). "When a district court decides an issue in its appellate capacity, this Court reviews the magistrate court's record 'to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.' " *Id.* (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013)). "This Court exercises free review of the legal issues analyzed by the district court acting in its appellate capacity." *Kesting v. Kesting*, 160 Idaho 214, 216, 370 P.3d 729, 731 (2016) (quoting *Baruch v. Clark*, 154 Idaho 732, 736, 302 P.3d 357, 361 (2013)).

5

## IV.    ANALYSIS

The overarching issue in this case is whether Father can file a Rule 60(b)(4) motion to set aside the termination and adoption judgment, asserting a ground not asserted in his first motion: that the judgment violated his constitutional right to due process. For the reasons discussed below, we hold that Father's Rule 60(b)(4) motion is permitted because the unrebutted record establishes a fundamental error that deprived Father of his right to procedural due process, which in turn violated his constitutionally protected fundamental liberty interest in maintaining a relationship with his child. Accordingly, we affirm the district court's decision reversing the magistrate court. We remand to the magistrate court to hold an evidentiary hearing to determine whether Father's Rule 60(b)(4) motion was timely and if so, whether the termination and adoption judgment is void.

**A. Father's Rule 60(b)(4) motion implicates a fundamental error that merits an exception to the doctrine of claim preclusion.**

The doctrine of res judicata formed the basis for the magistrate court's and the district court's decisions. The question presented is whether a party can file a Rule 60(b)(4) motion after the party has previously filed a motion under a different Rule 60(b) subsection. Because Father's Rule 60(b)(4) motion established a fundamental error violating his constitutional right to due process, we hold that the doctrine of res judicata does not bar Father's motion in this instance.

The magistrate court denied Father's Rule 60(b)(4) motion after concluding it was barred by the doctrine of res judicata. The magistrate court concluded Father's due process argument was available to him at the time of his Rule 60(b)(3) motion, but he failed to make that argument in his first motion, and therefore res judicata barred Father from raising that argument in a subsequent Rule 60(b) motion. The magistrate court then concluded that Father's failure to properly appeal the denial of his Rule 60(b)(3) motion meant the decision denying the first motion was final and that the decision barred any other arguments he might have raised under Rule 60(b).

On intermediate appeal, the district court reversed the magistrate court's decision and concluded that the doctrine of claim preclusion only bars a party from relitigating the same claim or issue in a <u>subsequent</u> lawsuit. The district court concluded that the doctrine of claim preclusion did not apply because Father's Rule 60(b)(4) motion was filed in the <u>same</u> lawsuit as his Rule 60(b)(3) motion. The district court concluded that the doctrine of issue preclusion only applied to bar relitigation of an identical issue previously litigated. Because Father's Rule 60(b)(3) motion

did not raise a due process argument, the district court concluded that issue preclusion did not bar Father's Rule 60(b)(4) motion.

Mother argues that the district court erred because res judicata can apply within the same lawsuit to bar the filing of multiple Rule 60(b) motions. Father responds that the district court correctly determined that res judicata only applies in a subsequent lawsuit.

"Questions of law are reviewed *de novo*, and whether an action is barred by *res judicata* is a question of law." *Monitor Fin., L.C. v. Wildlife Ridge Ests., LLC*, 164 Idaho 555, 559, 433 P.3d 183, 187 (2019) (cleaned up) (quoting *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 80, 278 P.3d 943, 950 (2012)).

> *Res judicata* serves three fundamental purposes: (1) it preserves the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results; (2) it serves the public interest in protecting the courts against the burdens of repetitious litigation; and (3) it advances the private interest in repose from the harassment of repetitive claims.

*Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007). Res judicata covers both claim preclusion and issue preclusion. *Id.* Different tests are applied to determine whether claim preclusion or issue preclusion bars a claim. *Id.*

Claim preclusion "bars a subsequent action between the same parties upon the same claim or upon claims relating to the same cause of action." *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 190–91, 207 P.3d 162, 166–67 (2009) (internal quotation marks omitted) (quoting *Ticor Title Co.*, 144 Idaho at 123, 157 P.3d at 617). "Claim preclusion bars adjudication not only on the matters offered and received to defeat the claim, but also as to 'every matter which might and should have been litigated in the first suit.' " *Ticor Title Co.*, 144 Idaho at 126, 157 P.3d at 620 (quoting *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 436–37, 849 P.2d 107, 109–10 (1993)). There are three elements to a claim preclusion defense:

> (1) [T]he original action ended in final judgment on the merits; (2) the present claim involves the same parties as the original action; and (3) the present claim arises out of the same transaction or series of transactions as the original action.

*Berkshire Invs.*, 153 Idaho at 81, 278 P.3d at 951. When these elements are established, claim preclusion bars "every matter which might and should have been litigated in the first suit." *Magic Valley Radiology*, 123 Idaho at 436–37, 849 P.2d at 109–10 (quoting *Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922)).

7

"Issue preclusion protects litigants from having to relitigate an identical issue in a subsequent action." *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618. "The issue decided in the prior litigation must be identical to the issue presented in the present action." *Elsaesser v. Riverside Farms, Inc.*, 170 Idaho 502, 510, 513 P.3d 438, 445 (2022). The test for issue preclusion contains five elements:

> (1) [T]he party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618 (quoting *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 93, 29 P.3d 401, 404 (2001)).

Mother argues that the district court erred in holding that res judicata can only be applied to a claim raised in a different, subsequent case because this Court has applied the doctrine to bar relitigation of an issue previously decided in the same case in *State v. Wolfe*, 158 Idaho 55, 62, 343 P.3d 497, 504 (2015) (applying res judicata to bar a second, successive Idaho Criminal Rule 35 motion challenging the trial court's subject matter jurisdiction). In *Wolfe*, we held that a party could not file a second Idaho Criminal Rule 35 motion to challenge subject matter jurisdiction because the parties had previously argued, and the court had previously ruled on, the issue of subject matter jurisdiction in Wolfe's first Rule 35 motion. 158 Idaho at 63–66, 343 P.3d at 505–08. In our decision, we acknowledged that res judicata can bar relitigation of " 'any claims relating to the same cause of action . . . which might have been made' in the first suit," including claims related to subject matter jurisdiction. *Id.* at 63, 343 P.3d at 505 (quoting *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002)).

We agree with Mother that our decision in *Wolfe* establishes that res judicata can apply within the same case to bar relitigation of those issues that were previously decided and are the subject of a final judgment. For this reason, we agree with Mother that the district court erred in reversing the magistrate court's decision on the basis that res judicata cannot be applied to a final judgment rendered in the same proceeding. However, while we agree with Mother that the district court erred in its reasoning, we affirm the district court's conclusion on alternative grounds.

In this case, while the magistrate court did not separately analyze the doctrines of claim preclusion and issue preclusion, its analysis establishes that it dismissed Father's Rule 60(b)(4)

8

motion on the basis of claim preclusion. This is clear from its statement that, "[t]he arguments [Father] now wishes to present were available to him at the time of his first 60(b) motion. . . . The Supreme Court dismissal and [Father]'s failure to perfect his appeals ended his claims in this matter." The district court's intermediate appellate decision separately analyzed the doctrines of claim preclusion and issue preclusion. Mother does not challenge the district court's conclusion that issue preclusion did not apply because Father's 60(b)(4) challenge raised a different argument than his prior 60(b)(3) challenge. We therefore affirm the district court's decision that issue preclusion did not bar Father's Rule 60(b)(4) motion.

We also affirm the district court's decision that claim preclusion did not bar Father's Rule 60(b)(4) motion because the unrebutted evidence in the record establishes a fundamental error that violated Father's constitutional rights to due process and his fundamental liberty interest in the custody, care, and control of his child. We note that Father has not argued that we should apply the fundamental error doctrine to permit his Rule 60(b)(4) motion. While this "Court generally will not consider on appeal issues not raised by the parties, we have made exceptions for certain issues in certain types of cases." *Idaho Dep't of Health & Welfare v. John Doe (2017-32)* (*In re Doe Child.*), 163 Idaho 536, 538, 415 P.3d 945, 947 (2018) (internal quotation marks and citation omitted). One of those narrow exceptions involves allegations of a fundamental error resulting in a violation of a person's fundamental right to raise their own child in contravention of the due process clause of the Fourteenth Amendment of the Constitution of the United States. *Id.*; *State v. John Doe* (*In re Jane Doe*), 144 Idaho 534, 535, 164 P.3d 814, 815 (2007).

"Fundamental error . . . is error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process.' " *John Doe*, 144 Idaho at 536, 164 P.3d at 816 (quoting *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003)). Although fundamental error is usually applied in the criminal context, we have applied the doctrine when an error affects a parent's "fundamental right to raise his own child and violates the due process clause of the Fourteenth Amendment." *Id.*; *see John Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947; *State v. John Doe* (*In re: An Unnamed Child under 18 Years of Age*), 123 Idaho 370, 371, 848 P.2d 428, 429 (1993); *John Doe I v. Jane Doe (2020-54)* (*In re Jane Doe II*), 169 Idaho 82, 86–87, 491 P.3d 644, 648–49 (Ct. App. 2021).

As we discuss in more detail below, the unrebutted evidence in the record before us establishes that Father had a "biology plus" relationship with the child and he therefore acquired

fundamental parental rights related to the child. The termination of Father's parental rights without prior notice or an opportunity to respond constituted a clear and obvious error that violated his constitutional right to due process and his fundamental right to raise his own child. We therefore hold that the fundamental error doctrine applies and permits Father to file a Rule 60(b)(4) motion challenging the judgment as void.

Preliminarily, we note an inconsistency in our caselaw. In our decision in *In re John Doe (2013-29)*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014), we held that "this Court's fundamental error analysis is not applicable to termination appeals because they are civil, not criminal or quasi-criminal matters." Our decision in that case, however, failed to address, distinguish or overrule our prior 2007 *Doe* decision where we applied the doctrine of fundamental error in a termination appeal. *John Doe*, 144 Idaho at 536, 164 P.3d at 816. We again applied the fundamental error doctrine in our 2018 decision in *John Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947.

Where there is controlling precedent on questions of Idaho law, "the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990) (citations omitted). Our decision in *John Doe (2013-29)* did not address stare decisis or conclude that our 2007 *Doe* decision was manifestly wrong, unjust, or unwise, or needed to be overruled to vindicate plain, obvious principles of law. In the absence of any such analysis or conclusion, we are bound to follow our 2007 *Doe* decision. We therefore overrule *John Doe (2013-29)* to the extent that it holds that the fundamental error doctrine is not applicable to termination appeals.

Turning to the fundamental error in this case, this Court has repeatedly emphasized the constitutionally-protected fundamental liberty interest parents have in maintaining a relationship with their children. "Parental rights are a fundamental liberty interest, constitutionally protected by the Fourteenth Amendment." *Idaho Dep't of Health & Welfare v. John Doe (2011-02)* (*In re John Doe*), 151 Idaho 356, 362, 256 P.3d 764, 770 (2011). "Parents have a fundamental liberty interest in family autonomy and in maintaining a relationship with their children." *John Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947 (first citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); and then citing *Idaho Dep't of Health & Welfare ex rel. Jane Doe v. John Doe (2015-01)* (*In re*

*John Doe*), 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015)). "Parents have a fundamental right to maintain a familial relationship, and to the 'custody, care and control' of their children; this right is protected by the Fourteenth Amendment." *Idaho Dep't of Health & Welfare v. John Doe (2013-17)* (*In re Termination of Parental Rts. of Doe*), 155 Idaho 896, 902, 318 P.3d 886, 892 (2014) (quoting *State v. John Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006)). This Court has previously found fundamental error when the trial court placed the burden on the wrong party in termination proceedings, *John Doe*, 144 Idaho at 536, 164 P.3d at 816, and when the trial court failed to properly dismiss a termination proceeding after concluding that termination was not in the children's best interest. *John Doe (2017-32)*, 163 Idaho at 539, 415 P.3d at 948.

Father's Rule 60(b)(4) motion rested on unrebutted evidence establishing a violation of his right to procedural due process that merits application of the fundamental error doctrine to permit an exception to the doctrine of claim preclusion in this case. Mother does not dispute that she did not serve Father with a copy of the petition to terminate his parental rights and gave him no notice of the hearing on the petition. Mother alleged in her petition that Father was not entitled to notice because they were not married, Father never developed a substantial relationship with the child, Father never paid child support or demonstrated any commitment to the financial responsibilities of parenthood, Father was not listed on the child's birth certificate, and Father had failed to file a notice of commencement with the Idaho Bureau of Health Policy and Vital Statistics. Mother subscribed and swore under oath that these statements were true and correct. The record on appeal does not contain a transcript of the hearing on Mother's petition, but we presume the magistrate court relied on Mother's statements when concluding that Father was not entitled to notice of the petition or the hearing.

Father submitted a declaration in support of his Rule 60(b)(4) motion, which contested several of Mother's assertions contained in the petition. Specifically, Father presented evidence that:

- Father and Mother dated for two years and were engaged to be married until Mother called off the engagement;
- While Mother was pregnant, Father attended her medical appointments until Mother stopped informing him of the appointments;
- While Mother was pregnant, Father purchased a home and household items, including nursery and infant necessities;
- Father was present at the hospital and in the delivery room for the child's birth;

11

- Father was not given the option to sign the child's birth certificate;

- Father visited the child every week, often several times per week, between the child's birth and the day he was informed his parental rights were terminated;

- Father created a room for the child in his own home;

- Father estimated he had at least ninety visits with the child before he was informed his parental rights had been terminated;

- Father brought the child to his own home and his parents' home for visits with his parents and other family members;

- Father provided Mother with four payments of $200 for the child's benefit and Father stopped making payments on the advice of a family counselor, who erroneously advised him that if Mother was not willing to give Father equal parenting time, then he should not pay her any support; and

- Father asked Mother about setting up a joint account for the child's benefit and Mother responded that she was not willing to do anything jointly with Father.

Attached to Father's declaration were multiple photos showing Father and his family having visitation with the child. Mother submitted no opposing evidence. Moreover, because the magistrate court granted Mother's motion to dismiss on procedural grounds, there was no evidentiary hearing on the merits of Father's second motion.

We hold that the unrebutted evidence before us establishes that Father had a "biology plus relationship" and that he therefore acquired fundamental parental rights. Father was therefore entitled to notice of the termination proceedings and an opportunity to be heard prior to the termination of his parental rights. *See John Doe II (2022-06)*, 170 Idaho at 912, 517 P.3d at 841. It is undisputed that Father did not receive the required notice or opportunity to respond.

This Court "must ensure that the judiciary functions 'in a manner consistent with the individual constitutional rights, both state and federal, of all who appear before the bar of justice.' " *John Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947 (quoting *State v. LePage*, 102 Idaho 387, 391, 630 P.2d 674, 678 (1981)); *see also Jane Roe v. John Doe* (*In re Jane Doe*), 143 Idaho 188, 192, 141 P.3d 1057, 1061 (2006) (holding that a trial court cannot ignore relevant evidence when the fundamental liberty interest in maintaining a relationship with one's child is at stake). In order to obtain relief under the fundamental error doctrine, the error must not be harmless and must have affected a party's substantial rights. *State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007); *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). The failure to provide Father with procedural due process is not harmless because it deprived Father of his fundamental

constitutional right to raise his child. We conclude that the unrebutted evidence before us meets the requirements for application of the fundamental error doctrine. We therefore apply the doctrine in this instance to provide an exception to the general rules of claim preclusion.

**B. Father's Rule 60(b)(4) motion implicates a fundamental error that merits an exception to the waiver doctrine.**

Mother next alleges that Father waived his constitutional due process argument during the hearing on his first Rule 60(b) motion. During that hearing, Father's previous attorney stated that he was not challenging Idaho's Putative Father Registry because it had previously been upheld as constitutional:

> Your Honor, the Putative Father Registry and the some what [sic] draconian nature in which it operates has a purpose, and the legislature looked at that purpose, and there has been Supreme Court cases that have gone up to the Supreme Court on the Putative Father Registry, and it has been upheld.
>
> We all know that. All three of the attorneys in this room know that, and *we're not filing to suggest this is unconstitutional*. It has already been proven to be constitutional; however, there is a back-end around it.

Father's previous attorney then went on to argue that the judgment should be set aside for fraud pursuant to Rule 60(b)(3). The magistrate court, in its written decision, acknowledged that Father's previous attorney had stated that he was not pursuing a constitutional challenge:

> [D]uring oral arguments [Father]'s attorney acknowledged two crucial facts: (1) [Father] was aware of constitutional arguments and was not pursuing them, and (2) despite the [c]ourts [sic] ruling the losing party would be appealing.

The district court acknowledged the same in its decision.

Before addressing the merits of this argument, we briefly address Father's contention that Mother failed to preserve this argument because she failed to raise it below. "To preserve an issue for appeal, both the issue and the party's position on the issue must be raised before the trial court." *Kelly v. Kelly*, 171 Idaho 27, 35, 518 P.3d 326, 334 (2022) (cleaned up) (quoting *State v. Foeller*, 168 Idaho 884, 891, 489 P.3d 795, 802 (2021)). The record reveals that this issue was argued before the magistrate court and again before the district court. Accordingly, we conclude that Mother's waiver argument is preserved for appeal.

Turning to the merits of Mother's waiver argument, we have explained that, if a party "expressly stated to the magistrate court that [they are] not disputing [an issue]," this concession constitutes "a waiver of the issue" for appeal. *Id.* Further, while constitutional rights, including due process rights, can be waived, a presumption against waiver applies regarding fundamental

13

constitutional rights. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (citations omitted); *John Doe I v. Jane Doe (2020-54)* (*In re Jane Doe II*), 169 Idaho 82, 88, 491 P.3d 644, 650 (Ct. App. 2021). While Father's prior attorney's statements could be construed to waive Father's legal challenges to the judgment of adoption, we decline to apply the waiver doctrine in this instance to bar his Rule 60(b)(4) motion.

For the reasons previously discussed herein, we conclude that a fundamental error occurred, which deprived Father of his right to due process and his fundamental right to raise his child. We therefore conclude that it is appropriate to apply the fundamental error doctrine to create an exception to the waiver doctrine for purposes of Father's Rule 60(b)(4) motion.

## C. Mother's other procedural arguments are without merit.

We next address Mother's alternative arguments. Even though the district court did not rule on these alternative arguments, Mother argues this Court can reverse the district court under the "right result, wrong theory" doctrine. We conclude that these arguments are without merit.

### 1. Father's Rule 60(b)(4) motion is not barred by the rule against claim splitting.

"Claim splitting often arises in the context of claim preclusion and res judicata, and the general rule is that damages sustained or accrued from a single wrongful act must be claimed and recovered in one action." *Stiffler v. Hydroblend, Inc.*, 172 Idaho 630, 643, 535 P.3d 606, 619 (2023) (internal quotation marks and citations omitted). Claim splitting arises when a party files successive actions from the same transactional claim or wrongful act. *See id.*; *Kootenai Elec. Co-op., Inc. v. Lamar Corp.*, 148 Idaho 116, 122–23, 219 P.3d 440, 446–47 (2009); *Hindmarsh v. Mock*, 138 Idaho 92, 94–96, 57 P.3d 803, 805–07 (2002); *Diamond v. Farmers Grp., Inc.*, 119 Idaho 146, 151–52, 804 P.2d 319, 324–25 (1990).

Mother provides no legal citations or argument as to why the rule against claim splitting should apply to successive motions filed within the same lawsuit. The rule has only been applied to instances where a party seeks "a second bite at the apple" by filing a successive lawsuit in a different court, not where a party brings a different argument within the same lawsuit. We reject Mother's claim splitting argument because this appeal does not concern a subsequent lawsuit concerning the same transaction as a prior suit.

### 2. Father's Rule 60(b)(4) motion is not barred by the invited error doctrine.

Mother argues that the district court erred by failing to consider the invited error doctrine. Mother asserts that Father invited the error that he attacks on appeal because he conceded that,

when a void judgment is entered against a party, the party may file a motion to set aside *or* he may file a separate action to collaterally attack a judgment but he cannot do both. Mother therefore asserts that, once Father chose a course by filing a Rule 60(b) motion, his concession constituted an admission that his only recourse was to appeal the denial of that first motion.

Father responds that Mother mischaracterizes the record. Father asserts that he was simply quoting the relevant rule from *H. S. Cramer & Co. v. Washburn-Wilson Seed Co.*, 71 Idaho 421, 233 P.2d 809 (1951), and then spent the remainder of his brief and subsequent oral argument distinguishing that case and explaining why the rule did not apply to his Rule 60(b)(4) motion.

In its "Relevant Uncontroverted Facts" section of its decision, the magistrate court found that:

> The parties *accept the following specific case law* of the Idaho Supreme Court: . . . (4) "If a void judgment is entered against a party, they may file a motion to set aside, or they may file a separate action to collaterally attack a judgment." *H.S. Cramer & Co. v. Washburn-Wilson Seed Co.*, 71 Idaho 421, 433 (1951); and (5) "If a party chooses to move to set aside, they no longer may file a separate suit, and their only recourse if the motion is denied is to appeal the denial." Id.

(Emphasis added; footnote omitted.) The district court conducted a de novo review and declined to adopt *H.S. Cramer & Co.* in deciding the appeal.

"The doctrine of invited error applies to estop a party from asserting an error when [the party's] own conduct induces the commission of the error." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 789, 526 P.3d 650, 660 (2023) (alternation in original) (quoting *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 727, 418 P.3d 1225, 1236 (2018)). "Accordingly, an error is not reversible if the party invited the error." *Id.* (citing *City of Middleton*, 163 Idaho at 727, 418 P.3d at 1236).

We conclude that Father did not invite any error because he did not concede that *H.S. Cramer & Co.* applied to his Rule 60(b)(4) motion. To the contrary, his briefing and argument below indicate he repeatedly asserted that the case was distinguishable and therefore did not control. Father's brief in support of his Rule 60(b)(4) motion described a relevant rule statement from *H. S. Cramer & Co.* and then attempted to distinguish his action from the quoted language, stating "[b]ut [*H. S. Cramer & Co.*] is easily distinguishable. . . . The situation described in [*H. S. Cramer & Co.*] is dissimilar from the circumstances presented here, and does not control." Father also asserted at oral argument before the magistrate court that *H. S. Cramer & Co.* was "entirely different than the case at bar." Father's position regarding *H. S. Cramer & Co.* remained the same

15

throughout the appeals process—he acknowledges the caselaw and then tries to distinguish it. The invited error doctrine is not applicable.

Mother also repackages her invited error argument as one of preservation and argues that Father failed to preserve his argument on appeal because he conceded below that *H.S. Cramer & Co.* did control the outcome of his Rule 60(b)(4) motion. For the reasons discussed above, we conclude that this argument is without merit. Father has consistently recognized the rule statements from *H.S. Cramer & Co.* but has argued that they do not apply to his Rule 60(b)(4) motion.

3. *Father did not fail to direct his argument on intermediate appeal to the magistrate court's decision.*

Mother next argues that the district court violated its duty not to presume error when it declined to address their "appellate waiver" argument below. Mother argues that, on intermediate appeal, Father failed to articulate how the magistrate court erred. Father responds that he squarely directed his arguments on intermediate appeal toward the magistrate court's decision.

The district court did not address Mother's "appellate waiver" argument. Instead, the district court determined that motions to set aside void judgments pursuant to Rule 60(b)(4) are subject to de novo review.

It is not clear what error Mother is alleging. Mother cites an Idaho Court of Appeals case, *State v. Byrum*, 167 Idaho 735, 740, 476 P.3d 402, 407 (Ct. App. 2020), for the proposition that, when an opening brief is devoid of any reference to the lower court's decision and fails to provide argument, citation to the record, or authority related to the lower court's decision, an appellate court will deem those arguments waived. However, Father's briefing below identified the magistrate court's decision as the basis for his appeal and explained, with substantial citations to legal authority and the record, why res judicata did not bar his Rule 60(b)(4) motion. Father distinguished the caselaw relied on by the magistrate court and argued that "[t]he Magistrate did not address modern case law, and the more developed procedure for analyzing res judicata." (Emphasis added.) Father additionally argued that the magistrate court's analysis was wrong at oral argument on appeal before the district court.

Father's briefing and argument below repeatedly referenced the lower court's decision and provided argument, citations to the record, and legal authority attacking the magistrate court's decision. Accordingly, we reject Mother's argument on this issue.

*4. Father's Rule 60(b)(4) motion was not used to evade the deadline to appeal.*

Mother next argues that Father is impermissibly using his Rule 60(b)(4) motion to evade the deadline to appeal. A Rule 60(b) motion "may be used to obtain relief from a final judgment; however, it should not be used as a substitute for a timely appeal." *Maynard v. Nguyen*, 152 Idaho 724, 726, 274 P.3d 589, 591 (2011) (citing *Miller v. Haller*, 129 Idaho 345, 348–49, 924 P.2d 607, 610–11 (1996)). Idaho's appellate courts have applied this rule when a party files a Rule 60(b) motion without providing new evidence or argument on why relief was justified and simply asks the court to second-guess itself. *See Christmann v. State Farm Mut. Auto. Ins. Co.*, 172 Idaho 714, 721–22, 535 P.3d 1087, 1094–95 (2023); *Ross v. State*, 141 Idaho 670, 672, 115 P.3d 761, 763 (Ct. App. 2005); *Hoopes v. Bagley* (*In re Est. of Bagley*), 117 Idaho 1091, 1093–94, 793 P.2d 1263, 1265–66 (Ct. App. 1990). Here, Father is not attempting to relitigate the issues raised in his first Rule 60(b) motion. Instead, Father has articulated a new argument that alleges the original judgment violated his due process rights. He did not argue this in his Rule 60(b)(3) motion. Therefore, we conclude that Father's Rule 60(b)(4) motion was not used to evade the deadline to appeal.

*5. Father's Rule 60(b)(4) motion is not barred by the law of the case doctrine.*

Mother argues that Father's Rule 60(b)(4) motion is barred by the law of the case doctrine because Father argued that the adoption and termination judgment should be set aside in his first motion, and the magistrate court found that Father was not entitled to notice of the proceeding and that the adoption occurred according to law. Mother argues that these findings are final and the law of the case doctrine precludes relitigating these issues. Father responds that the law of the case doctrine is inapplicable here because the due process issue raised in Father's Rule 60(b)(4) motion has not been adjudicated.

The law of the case doctrine is not applicable here because there has been no decision *on appeal* in this case. "Whether the law of the case doctrine applies is a question of law upon which this Court exercises free review." *Berrett v. Clark Cnty. Sch. Dist. No. 161*, 165 Idaho 913, 921, 454 P.3d 555, 563 (2019). "The doctrine requires that when an *appellate court*, in 'deciding a case presented states in its opinion a *principle or rule of law necessary to the decision*, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal[.]' " *Id.* at 921–22, 454 P.3d at 563–64 (first emphasis added) (quoting *Regan v. Owen*, 163 Idaho 359, 362, 413 P.3d 759, 762 (2018)).

The law of the case doctrine applies after an *appellate court* states a principle or rule of law necessary to the decision, and that becomes the law of the case on remand or subsequent appeal. However, here, there is no prior appellate decision addressing the magistrate court's subject matter jurisdiction. Mother is simply repackaging her res judicata argument. We therefore conclude that the law of the case doctrine does not bar Father's Rule 60(b)(4) motion.

6. *The issue of whether Father's Rule 60(b)(4) motion was timely is an issue of fact to be determined on remand by the magistrate court.*

Lastly, Mother argues that Father's Rule 60(b)(4) motion was untimely because it was not made within a "reasonable time" after the entry of the termination and adoption judgment and that Father should have pursued his due process claims in his first Rule 60(b) motion. Father responds that his Rule 60(b)(4) motion was brought within a reasonable time because he has consistently sought relief since the termination and adoption judgment was entered. Neither the magistrate court nor the district court made any findings concerning the timeliness of Father's Rule 60(b)(4) motion.

Pursuant to the plain language of Rule 60(c)(1), a motion under Rule 60(b)(4) must be made "within a reasonable time." I.R.C.P. 60(c)(1). Here, we note a divergence in our caselaw. We have held that "[n]otwithstanding the timeliness requirements of Rule 60(b), void judgments can be attacked at any time." *Golub v. Kirk-Scott, Ltd.*, 157 Idaho 966, 970, 342 P.3d 893, 897 (2015) (citing *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009)). We recently reiterated this rule. *D.L. Evans Bank v. Dean*, 173 Idaho 20, 29, 538 P.3d 793, 802 (2023) (holding that "a Rule 60(b)(4) motion can be brought at any time"). However, we have also held that a Rule 60(b)(4) motion must be brought within a reasonable time, in line with the plain language of Rule 60(c)(1). *Thiel v. Stradley*, 118 Idaho 86, 88, 794 P.2d 1142, 1144 (1990); *Wright v. Wright*, 130 Idaho 918, 922, 950 P.2d 1257, 1261 (1998); *McGrew v. McGrew*, 139 Idaho 551, 559, 82 P.3d 833, 841 (2003); *Fisher Sys. Leasing, Inc. v. J & J Gunsmithing & Weaponry Design, Inc.*, 135 Idaho 624, 628–29, 21 P.3d 946, 950–51 (Ct. App. 2001); *Meyer v. Meyer*, 135 Idaho 460, 462, 19 P.3d 774, 776 (Ct. App. 2001); *Lytle v. Lytle*, 158 Idaho 639, 642, 350 P.3d 340, 343 (Ct. App. 2015).

These two lines of cases directly contradict each other. We take this opportunity to overrule the line of cases that hold that a Rule 60(b)(4) motion may be brought at any time. The plain language of Rule 60(c)(1) requires the motion to be brought "within a reasonable time." Inquiring

18

into the origin of the rule that "a Rule 60(b)(4) motion can be brought at any time" leads us to the case of *Burns v. Baldwin*, 138 Idaho 480, 65 P.3d 502 (2003), in which we examined whether a California judgment was entitled to full faith and credit in Idaho. The appellant argued that it was not because a California appellate court lacked jurisdiction to modify the judgment. *Id.* at 483, 65 P.3d at 505. In examining the parties' arguments, we cited California law for the premise that, "[a] judgment of a court without jurisdiction is void, and void judgments may be attacked at any time." *Id.* at 486, 65 P.3d at 508.

This Court has since imported this statement of California law into Idaho's jurisprudence. This was error, as our interpretation of California law is not applicable to civil actions in Idaho's courts, which are governed by the Idaho Rules of Civil Procedure. Idaho's civil rules clearly state that a Rule 60(b)(4) motion must be brought within a reasonable time. Accordingly, to the extent our prior caselaw holds that a Rule 60(b)(4) motion can be brought "at any time," we overrule that portion of those cases. *See Pinkham v. Plate*, 174 Idaho 178, ___, 552 P.3d 605, 617–18 (2024); *D.L. Evans Bank*, 173 Idaho at 29, 538 P.3d at 802; *Golub*, 157 Idaho at 970, 342 P.3d at 897; *Meyers*, 148 Idaho at 291, 221 P.3d at 89.

The question of whether Father's Rule 60(b)(4) motion was filed within a reasonable time is a question of fact for the trial court to resolve. *Thiel*, 118 Idaho at 88, 794 P.2d at 1144; *Fisher Sys. Leasing, Inc.*, 135 Idaho at 628, 21 P.3d at 950. "Where judgment is entered without the party's knowledge, what constitutes a reasonable time is judged from the time that the party learned of the judgment." *McGrew*, 139 Idaho at 559, 82 P.3d at 841. The record before this Court suggests that Father has consistently sought relief since the termination and adoption judgment was entered. The record further indicates that the failure to properly perfect an appeal from the denial of Father's first Rule 60(b) motion was the product of his first attorney's carelessness, rather than the product of any decision by Father to drop his appeal. However, we remand this matter to the magistrate court to determine whether Father's Rule 60(b)(4) motion was filed within a reasonable time. If the magistrate court determines it was, then we leave it to the magistrate court to determine whether to grant Father's motion on the basis of the evidence submitted by Father or conduct an evidentiary hearing to receive additional evidence concerning Father's motion.

**D. Father is entitled to partial attorney fees on appeal.**

Mother requests attorney fees both on appeal to this Court and for the proceedings before the district court pursuant to Idaho Code section 12-121. Idaho Code section 12-121 permits the

award of reasonable attorney fees to the "prevailing party" when the case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. The district court denied Mother's request because she was not the prevailing party on appeal. "The Court reviews a district court's decision of whether to award attorney fees under Idaho Code section 12-121 for abuse of discretion." *Kesting v. Kesting*, 160 Idaho 214, 216, 370 P.3d 729, 731 (2016). Section 12-121 only allows a "prevailing party" to be awarded attorney fees. I.C. § 12-121. Mother was not the prevailing party on intermediate appeal or before this Court. Thus, the district court's decision not to award attorney fees to Mother below is affirmed, and we decline to award Mother attorney fees for the appeal before this Court.

Father requests attorney fees on appeal pursuant to section 12-121. Father argues that Mother presented inapplicable legal theories without cogent argument; misstated the record; and attacked the motives and integrity of Father, his counsel, and the district court. Mother's arguments regarding invited error, appellate waiver, law of the case doctrine, and claim splitting are frivolous or without foundation. Mother's argument on invited error was premised on a misleading characterization of the record. Mother's argument on appellate waiver ignores the fact that Father's briefing and argument below clearly references the lower court's decision and provides argument, citation to the record, and authority related to the lower court's decision. Mother's argument on the law of the case doctrine was simply a repackaging of her res judicata argument and ignores our caselaw explaining that the law of the case doctrine applies after a rule of law is decided on appeal. Finally, Mother provides no legal citations or argument as to why the rule against claim splitting should apply to successive motions filed within the same lawsuit. Accordingly, we award Father partial fees on appeal for time spent defending against those arguments.

While ultimately unpersuasive, we conclude that Mother's other arguments were not brought, pursued or defended frivolously, unreasonably or without foundation. We do not award attorney fees to Father for time spent defending against those arguments.

## V. CONCLUSION

We hold that Father was not barred from filing his Rule 60(b)(4) motion. Accordingly, we affirm the district court's decision reversing the magistrate court's dismissal of that motion and remand for further proceedings consistent with this opinion. We also award Father his reasonable attorney fees on appeal, pursuant to Idaho Code section 12-121, for Mother's invited error,

20

appellate waiver, law of the case, and claim splitting arguments. Father is also awarded his costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.

## ON DENIAL OF PETITION FOR REHEARING

ZAHN, Justice.

Jane Doe 1 and her now-husband ("Adoptive Father") (collectively, "Mother") filed a petition asking this Court to rehear this case and issue a substitute opinion that reverses the district court and affirms the magistrate court's decision dismissing Father's Rule 60(b)(4) motion. For the reasons discussed below, Mother's Petition for Rehearing is DENIED.

### A. The six-month statute of repose in Idaho Code section 16-1512(2) does not bar Father from seeking relief because it is unconstitutional as applied to Father in this instance.

First, Mother argues that this Court should rehear the appeal because Father's Rule 60(b)(4) motion was filed more than six months after the entry of judgment and was therefore barred by the statute of repose contained in Idaho Code section 16-1512(2):

> In no event, for any reason, other than fraud on the part of the party adopting a child, shall an adoption be overturned by any court or collaterally attacked by any person or entity after six (6) months from the date the order of adoption becomes final.

I.C. § 16-1512(2). We note that Mother did not cite section 16-1512(2) in their briefing on appeal or argue that Father's Rule 60(b)(4) motion was barred by a statute of repose. We do not usually consider new arguments raised for the first time in a petition for rehearing. *See Insight LLC v. Gunter*, 154 Idaho 779, 788, 302 P.3d 1052, 1061 (2013). However, because Mother raises this new argument in response to a doctrine that this Court raised sua sponte, we will consider Mother's argument.

It is within the power of the legislature to establish statutes of repose. *Kirkland v. Blaine Cnty. Med. Ctr.*, 134 Idaho 464, 471, 4 P.3d 1115, 1122 (2000). However, this Court may strike down a statute of repose if it is applied unconstitutionally under the facts of a case. *See Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 717–19, 791 P.2d 1285, 1296–98 (1990). "Whether a statute of repose is constitutional as applied is a question of law to be determined on a case-by-case basis." 54 C.J.S. *Limitations of Actions* § 8 (Dec. 2024 update). In an "as applied" challenge, a statute is unconstitutional if it operated to violate a party's constitutional rights under the specific circumstances of the case. *Jane Doe I v. John Doe II (2022-06)* (*In re John Doe II*), 170 Idaho 901,

21

909, 517 P.3d 830, 838 (2022) (citing *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 870, 154 P.3d 433, 441 (2007)).

We hold that applying section 16-1512(2) would be unconstitutional as applied to the facts of this case because it would violate Father's right to procedural due process. Father's Rule 60(b)(4) motion alleged that the judgment terminating his parental rights was void because he was deprived of notice and an opportunity to respond. Father submitted evidence, which is unrebutted, that he developed a "biology plus" relationship with his child and therefore possessed a constitutionally protected fundamental right to maintain a familial relationship and to the custody, care, and control of his child. *See id.* at 911, 517 P.3d at 840. As such, he was entitled to procedural due process prior to the deprivation of that fundamental right. *See Telford v. Nye*, 154 Idaho 606, 611, 301 P.3d 264, 269 (2013).

> The Fourteenth Amendment of the U.S. Constitution guarantees procedural due process of law. The minimal requirements of procedural due process relate to notice and hearing in the deprivation of a significant life, liberty, or property interest. A procedural due process inquiry is focused on determining whether the procedure employed is fair. Due process is not a rigid doctrine; rather, it calls for such procedural protections as are warranted by a particular situation. The procedure required is merely that to ensure that a person is not arbitrarily deprived of his or her rights. The opportunity to be heard must occur at a meaningful time and in a meaningful manner.

*Id.* (internal quotation marks and citations omitted).

Given the unrebutted evidence at this stage of the proceedings, which demonstrates that Father has established a "biology plus" relationship with the child, we hold that application of the six-month statute of repose would be arbitrary and would fail to provide Father with an opportunity to be heard at a meaningful time and in a meaningful manner. It is undisputed that Father's parental rights were terminated without prior notice and an opportunity to respond. The delay in filing his second motion was minimal and not the result of any inaction on Father's part. Upon learning that his parental rights had been terminated, Father has consistently sought to set aside the judgment, be heard on the allegations contained in the petition, and reestablish his parental rights.

Father's parental rights were terminated on March 1, 2022. The next day, Father filed a petition with the magistrate court seeking joint legal and physical custody of the child. That same day, he also registered with the Idaho Department of Health and Welfare as the father of the child under Idaho's Putative Father Registry. On March 3, Father filed a request with the county clerk to access the sealed petition and the order granting the adoption of the child. One week after the

22

judgment was entered, Father filed his first motion to set aside the judgment. Two weeks later, on March 22, the magistrate court denied the motion. On April 5, and again on April 14, Father's previous attorney attempted to appeal the denial of his motion to set aside but failed to properly perfect the appeal. On April 27, this Court issued an order dismissing the appeal pursuant to Idaho Appellate Rule 12.2(a)(1).

At some point, a different district court than the one at issue in this appeal noticed a status conference on Father's first appeal. We do not know exactly when this occurred because the notice of hearing is not present in the record. On July 1, the other district court held the status conference, at which the parties expressed differing opinions on the status of Father's appeal of the order denying his first motion to set aside. The court ordered the parties to file written briefs on the matter. The parties filed their respective briefs on July 22. Father argued that the district court had jurisdiction to consider the appeal and Mother argued it did not. The court held another status conference on July 29, at the conclusion of which it took the parties' jurisdictional arguments under advisement.

Two weeks later, and without having received a decision from the other court, Mother filed a Verified Petition for a Writ of Prohibition or a Writ of Mandamus with this Court, contesting the district court's jurisdiction to take any action on the appeal and asking this Court to prohibit the district court from taking further action. Approximately a month later, on September 9, this Court issued a writ of prohibition that, in relevant part, enjoined the other district court from taking further action. All told, the litigation spurred by the other district court's erroneous setting of a status conference appears to have consumed approximately three to four months of Father's six-month statute of repose.

A little over a month after this Court issued a writ of prohibition, on October 17, new counsel appeared on Father's behalf and filed a second motion to set aside the adoption and termination judgment. That motion is the subject of the present appeal.

Father filed his Rule 60(b)(4) motion approximately seven and a half months after the date of the order terminating his parental rights. During that time, he actively pursued the legal avenues available to him to set aside the judgment terminating his parental rights. This is not a circumstance where Father took no action for months. Instead, Father consistently sought to set aside the judgment and be heard. We do not fault Father for litigating the propriety of the district court's erroneous notice setting a status conference because if that action had been deemed lawful, it would

23

have provided Father an opportunity to litigate the propriety of the magistrate court's order denying his first motion to set aside. Under these circumstances, we conclude it would be a deprivation of procedural due process to bar Father's Rule 60(b)(4) motion simply because he filed it one and one-half months after the running of the statute of repose.

Mother cites *Martin v. Adoption of L.M.D.*, 64 So. 3d 758 (Fla. Dist. Ct. App. 2011), as persuasive authority that the Court should not question the constitutionality of section 16-1512(2). However, we conclude that case is distinguishable and therefore unpersuasive. In *Martin*, the biological mother of a child signed documents consenting to the adoption of her child, but later moved to vacate the adoption two years after the entry of final judgment. 64 So. 3d at 758–59. The Florida District Court of Appeal ordered dismissal of the case after concluding that the biological mother could not overcome Florida's one-year time limit for challenges on any ground in adoption proceedings. *Id.* at 759. The facts of *Martin* are readily distinguishable from those in this case because the biological mother was a party to the adoption proceedings, she consented to the adoption, and she waited two years to file a motion to set aside the judgment.

We are similarly unpersuaded by Mother's citation to *Lively v. Smith*, 848 S.E.2d 620 (Va. Ct. App. 2020). In *Lively*, a biological mother consented to the adoption of her child but moved to set aside the judgment seven years later on the basis that she was inadequately informed about the nature and legal consequences of consenting to the adoption of her child. 848 S.E.2d at 622–23. The Virginia Court of Appeals held that a six-month statute of repose was constitutional as applied to the biological mother. *Id.* at 627–28. Again, *Lively* is readily distinguishable because the biological mother consented to the adoption and waited seven years to challenge the adoption. *Id.* at 628.

In summary, we hold that application of the six-month statute of repose contained in section 16-1512(2) would be unconstitutional as applied to Father because it would deny him procedural due process. We therefore decline to grant rehearing on that basis.

**B. This Court's sua sponte invocation of the fundamental error doctrine does not violate Jane Doe 1's or Adoptive Father's constitutional rights.**

Jane Doe 1 and Adoptive Father next argue that they each possess constitutionally protected parental rights. They argue that our decision to sua sponte invoke the fundamental error doctrine infringes upon those fundamental rights and is therefore subject to a strict scrutiny review pursuant to Idaho Code section 32-1013(1) and the Fourteenth Amendment of the United States Constitution. Jane Doe 1 also asserts that our decision violated her right to procedural due process,

that Idaho law requires us to grant rehearing, and that we should grant rehearing for policy reasons. These arguments are not persuasive.

Preliminarily, we question whether a court's interpretation and application of the law to decide a controversy that the parties have put before it constitutes state action for purposes of section 32-1013(1) or the Fourteenth Amendment of the United States Constitution. However, we need not answer that question today because Mother's arguments fail for other reasons.

First, nothing in our prior decision limited or infringed upon Jane Doe 1's parental rights. She sought to terminate the parental rights of Father. We concluded that, based on the evidence submitted by Father, he was entitled to notice and an opportunity to respond before his rights were terminated. Requiring compliance with the United States Constitution does not infringe upon Jane Doe 1's parental rights.

Second, Adoptive Father acquired no parental rights from a judgment entered in violation of Father's right to procedural due process. "A judgment or decree is invalid where it has no foundation of procedural due process, as where there is an absence of notice and an opportunity to be heard. A void judgment is a nullity, and no rights can be based thereon[.]" *Prather v. Loyd*, 86 Idaho 45, 50, 382 P.2d 910, 912 (1963) (citations omitted). The unrebutted evidence establishes that Father's right to procedural due process was violated. The legal consequence of this is that the judgment is void and Adoptive Father did not acquire constitutionally protected parental rights.

Jane Doe 1 and Adoptive Father next argue that they had a procedural due process right to notice of the Court's intent to invoke the fundamental error doctrine sua sponte and a right to be heard in response. We need not decide whether they actually had this right because to the extent they did, they received procedural due process. The clerk of this Court served a copy of the opinion on them through their counsel. Idaho Appellate Rule 42 provides for the filing of a petition for rehearing. Jane Doe 1 and Adoptive Father availed themselves of that opportunity. As such, they received notice of this Court's invocation of the fundamental error doctrine and an opportunity to respond.

Jane Doe 1 and Adoptive Father then argue that they have a statutory right to rehearing pursuant to Idaho Code section 32-1013(4):

> When a parent's fundamental rights protected by [the Idaho Parental Rights Act] are violated, a parent may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against the governmental entity.

25

I.C. § 32-1013(4). Once again, their argument is without merit. Section 32-1013(4) is premised on a violation of a parent's fundamental rights. For the reasons previously discussed, our opinion did not infringe upon or violate Jane Doe 1's fundamental parental rights, and the record does not establish that Adoptive Father possessed fundamental parental rights regarding the child.

Finally, Jane Doe 1 and Adoptive Father assert a policy argument and contend that we should rehear this case because our opinion "opened [P]andora's [B]ox" and "every biological father who fails to meet the requirements of Idaho's statute will have this case to cite and rely upon in bringing successive challenges to adoption judgments." The plain language of the holding in our January 9, 2025, Amended Opinion belied this hyperbolic assertion:

> We conclude that the assertions contained in Father's declaration, if true, may establish that Father had a "biology plus relationship" and was therefore entitled to notice of the termination proceedings and an opportunity to be heard prior to the termination of his parental rights.

*Doe I v. John Doe (2024-23)* (*In re: Jane Doe II*), No. 51723, 2024 WL 5182331, at *8 (amended Jan. 9, 2025). Our holding is limited to the circumstances of Father's case. The unrebutted evidence established that: (1) Father acquired constitutionally protected parental rights under the "biology plus" test; and (2) he was not provided with procedural due process prior to the termination of those rights. Even then, our substitute opinion remands the case for the magistrate court to determine whether Father filed his Rule 60(b)(4) motion within a reasonable time following the judgment of adoption. There is no language in our opinion suggesting that "every biological father" who did not register with Idaho's Putative Father Registry has a right to forever bring successive motions to set aside a judgment terminating his parental rights.

Rather, our holding follows and upholds United States Supreme Court precedent recognizing that a biological father is not entitled to due process simply due to a biological connection to the child. *See Jane Doe I v. John Doe II (2022-06)* (*In re John Doe II*), 170 Idaho 901, 907–08, 517 P.3d 830, 836–37 (2022). A father is entitled to procedural due process where he demonstrates significant personal contact with his child and a full commitment to parental responsibility. *See id.* And even then, under Idaho law, a father seeking to set aside a judgment of adoption on the basis that it violated his right to procedural due process must do so within a reasonable amount of time following entry of the judgment. I.R.C.P. 60(c)(1).

26

In sum, this Court's sua sponte invocation of the fundamental error doctrine did not violate Jane Doe 1's or Adoptive Father's rights under Idaho law or the United States Constitution and we decline to order rehearing on that basis.

**C. This Court did not erroneously apply the fundamental error doctrine in this case.**

Mother's final argument for why we should grant rehearing is that we erred in applying the fundamental error doctrine in this case. Mother cites our decision in *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019), to assert that Father's situation fails to meet two of the conditions that must be met before we will apply the fundamental error doctrine: (1) the party must demonstrate that one or more of his unwaived constitutional rights were violated; and (2) the error must be clear or obvious without the need for any additional information not contained in the appellate record.

On the first condition, Mother asserts that "the fundamental error doctrine simply cannot be invoked to excuse [Father's] original counsel's express waiver of a constitutional challenge to Idaho's adoption statute." Mother argues that Father twice waived his constitutional challenge: first at the hearing on his first motion to set aside when his counsel said he was not challenging Idaho's putative father registry, and second by virtue of the doctrine of claim preclusion because he failed to argue a constitutional violation in his first motion to set aside. Mother's argument fails because she has confused the waiver of a constitutional right with the waiver of a legal argument. *Miller* requires that the party's *constitutional rights* be unwaived. Mother's argument, however, contends that Father waived *a legal argument*. With this confusion corrected, we conclude that nothing in the record before us demonstrates that Father expressly waived the constitutional right at issue.

The constitutional right at issue is Father's right to procedural due process. Mother's argument focuses on the statement by Father's prior counsel that, "we're not filing to suggest [the putative father registry] is unconstitutional." Nothing in that statement expressly waived Father's constitutional right to due process. To the extent we were inclined to apply the doctrine of claim preclusion, which we have expressly held we are not, that doctrine does not operate to waive a constitutional right. Instead, the doctrine of claim preclusion operates to bar the consideration of legal arguments that might and should have been raised. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 126, 157 P.3d 613, 620 (2007). Mother fails to establish that Father expressly waived his right to procedural due process.

On the second condition, Mother argues that we only found a "potential due process violation," which precludes us from applying the fundamental error doctrine. *See Miller*, 165 Idaho at 119, 443 P.3d at 133 ("[T]he error must be clear or obvious, without the need for any additional information not contained in the appellate record[.]" (quoting *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010))). We concede that the language in our opinion created confusion on this point and take this opportunity to issue a substitute opinion that clarifies our holding.

Mother correctly notes that our opinion uses equivocal language when describing the error affecting Father's fundamental rights. Our language was an attempt to reconcile the unrebutted evidence before this Court while leaving room for the magistrate court to make its own decision on remand in the event it chooses to allow the parties to present additional evidence. However, in attempting to reconcile these two points, we inadvertently created an impression that we were uncertain whether, at this stage of the proceedings, a clear or obvious error had occurred. The substitute opinion we issue today corrects any misunderstanding. Today we explicitly state what we tried to communicate in our prior decision: that the unrebutted evidence in the record before us demonstrates a clear and obvious violation of Father's right to procedural due process.

On appeal and again on rehearing, Mother has repeatedly argued that this Court only has Father's side of the story. While that is true, that is only because Mother has repeatedly failed to introduce any evidence to the contrary. Mother had at least three opportunities in this case to present evidence supporting her contention that Father has not taken the necessary steps to establish a constitutionally recognized parental relationship with the child: (1) when she filed her petition seeking the termination of Father's parental rights; (2) when Father filed his first motion to set aside the adoption; and (3) when Father filed his second motion to set aside. Mother also could have presented evidence if she had served Father a copy of her petition and participated in an evidentiary hearing prior to entry of judgment. Finally, Mother could have agreed to an evidentiary hearing on either of Father's motions to set aside, at which she would have had the opportunity to present evidence. While Mother makes much of the fact that the litigation of this matter has lasted for three years, the duration is largely the product of the litigation strategy she employed throughout the case.

Rather than take the opportunity to present evidence at these junctures, Mother's litigation strategy was to rely on procedural arguments and attack the sufficiency of his evidence. This was a risky legal strategy insofar as it meant that the only evidence in the record before this Court is

Father's. When Mother's legal arguments failed, this Court was left to decide the appeal on the unrebutted evidence in the record. There is nothing untoward or inappropriate with this Court applying the evidence we have in the record to the legal standards applicable to the issue before us.

In summary, we did not err in applying the fundamental error doctrine and we decline to grant rehearing on that basis.

**D. Mother's counsel's personal attacks against this Court for remanding this case are inappropriate and uncalled for.**

Finally, we find it necessary to address Mother's counsel's personal attacks on this Court. While Mother's legal counsel, John E. Cutler, has raised valid legal arguments in Mother's Petition for Rehearing, he also repeatedly accuses this Court of bias, conflict of interest, acting as a legal advocate for Father, and undercutting public confidence in the legal system:

> [This Court] overstepped its bounds by treading into the realm of advocacy when it introduced the doctrine of fundamental error *sua sponte*[.]

*Pet. for Rehearing* at 1, *John Doe (2024-23)*, No. 51723 (Jan. 6, 2025).

> It is hard to imagine how [Mother's] rights of procedural due process were not implicated and harmed by this Court's decision to originate and advance a new argument on behalf of [Father] and thereafter adjudicate the merits of this argument—without ever hearing from [Mother] prior to issuance of an opinion. But the procedural quagmire has now been exponentially magnified by the fact that this Court's decision violated the Parental Rights Act. And the state-law claim under this statute must also be heard and decided in the first instance by this Court on rehearing. "Ordinarily, a member or members of this court engaged in legal action with a party appearing before this court in regard to another matter would voluntarily disqualify themselves." But "where disqualification results in an absence of judicial machinery capable of dealing with a matter, disqualification must yield to necessity." So this Court is left in the situation of deciding whether its current opinion has violated [Mother's] procedural due process rights, substantive due process rights, and statutory rights under Idaho's Parental Rights Act—with attorney fee exposure for the Court on the line under Idaho Code § 32-1013(5) . . . . Notwithstanding the unfortunate conflict of interest inherent in the procedural posture that has come up, [Mother] and their counsel have utmost respect for the members of this Court and fully expect the Court to impartially apply the law in resolving this dispute, for "the determination of this case will be made strictly on the facts in the record and based upon the interpretation of the applicable law."

*Id.* at 12 n.4 (citations omitted).

> The practical result of all of this is that when this Court uses its power to step into the role of an advocate—advancing a legal issue not briefed by either

party—and at the same time retains its power to adjudicate the merits of the issue it raised, the Court loses the appearance of impartiality. In making an argument for a party, the Court is no longer an umpire calling balls and strikes. The Court is batting, pitching, and running the bases for one of the teams. In these circumstances, the only thing that potentially restores the confidence of the public and litigants in the impartiality of the judiciary—is the obviousness and clarity of the correct outcome to the issue at hand. When there is in fact profound error—obvious to all—the *sua sponte* correction of that error can preserve confidence in the judiciary's fidelity to and consistent respect for the individual constitutional rights of all who appear before the bar of justice. But that confidence in the equal application of the law vanishes when this Court wades into the role of advocate and final decisionmaker in a case where the respective constitutional rights of the parties are not clear cut, where there is room for any (let alone substantial) difference of opinion on the appropriate outcome of the case. And it is to protect public confidence in the judicial system that this Court has strictly adhered to the requirement that fundamental error must be obvious and capable of proof solely based on the record—without any need for more information. By its own admission, this Court has violated this foundational tenant of the fundamental error doctrine, and this is yet one more basis to grant rehearing and to reinstate the dismissal of [Father's] second motion to set aside with prejudice.

*Id.* at 24 (citation omitted). There is a clear line between zealous advocacy and lobbing hyperbolic insults at a tribunal that rendered an opinion with which counsel and his client disagree. The excerpts quoted above crossed that line.

Notably absent from these excerpts is any citation to the record. While the excerpts contain several legal references, none address the propriety of a court sua sponte applying a legal doctrine. Having failed to support these attacks with citation to the record or the law pertaining to the assertions, these passages constitute nothing more than personal attacks against this Court. Counsel's personal attacks appear to be grounded in nothing more than the fact that this Court remanded the case for further proceedings. Unfortunately, we have observed that this kind of unprofessional attack against Idaho judges is becoming more commonplace in our courts. We therefore take this opportunity to address what constitutes appropriate and effective zealous advocacy.

We can appreciate the frustration an attorney and his client may feel when the client does not receive the hoped-for result in a case. That frustration can increase when the case is decided on a ground that was not raised by the parties. However, the fact that an attorney's client did not prevail, even on a ground raised sua sponte by the court, does not automatically indicate that the court has a conflict of interest, is biased against the nonprevailing party or has stepped into the role of advocate for the prevailing party. Rather, it may simply be a product of upholding the rule of

30

law. This Court "must ensure that the judiciary functions 'in a manner consistent with the individual constitutional rights, both state and federal, of all who appear before the bar of justice.' " *Idaho Dep't of Health & Welfare v. John Doe (2017-32)* (*In re Doe Child.*), 163 Idaho 536, 538, 415 P.3d 945, 947 (2018) (quoting *State v. LePage*, 102 Idaho 387, 391, 630 P.2d 674, 678 (1981)).

Instead of making a bald assertion that a court that issued an adverse decision is the result of bias, a conflict of interest, or the court having acted as an advocate, attorneys for nonprevailing parties are better served by turning their focus to the record, the governing law, and their own strategic decisions in handling the case. The answers to why a party did not prevail can often be found in one or more of these areas. A review of our opinion reveals that our decision to sua sponte apply the fundamental error doctrine to remand this case was driven by three factors:

- The unrebutted evidence establishing that Father had, from the time he learned Mother was pregnant with his child, taken repeated actions to develop a "biology plus" relationship with his child;

- The United States Supreme Court decisions holding that these fathers are entitled to due process prior to the termination of their parental rights; and

- Father's nearly continuous efforts to be heard by the court after Mother informed him that his parental rights had been terminated.

However, the Petition for Rehearing does little to address these factors and instead jumps to the conclusion that this Court was motivated by improper considerations in our application of the fundamental error doctrine.

When the attorney for a nonprevailing party believes a court has erred, the attorney should use the appropriate legal mechanism to ask the court to review its decision. The attorney's briefing in support of that request should attack the court's decision, not the court itself. Effective and appropriate zealous advocacy focuses on the record and the law, not on personal attacks against the court. If an attorney believes the record substantiates that the court is biased against his client, the attorney should cite to evidence in the record and the legal standards applicable to disqualification for bias. Unsubstantiated personal attacks that are solely based on the fact a party lost are not appropriate.

We take this opportunity to remind the attorneys who practice in this state that the purpose of a petition for rehearing is for the nonprevailing party to explain to the Court why the legal decision reached by the Court was incorrect—not to attack to the Court itself. We recognize that the termination of parental rights is among the most contentious and consequential cases that courts

handle. Heated emotions, however, do not give attorneys license to attack the integrity of any court for doing its job.

For the foregoing reasons, Mother's Petition for Rehearing is DENIED.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.